789 F.2d 1225
 40 Fair Empl.Prac.Cas. 1343,
40 Empl. Prac. Dec. P 36,108
Gwendolyn E. JONES, Plaintiff-Appellant,
v.
The CONTINENTAL CORPORATION; the Continental Insurance
Company; Bud Meulemans; and R.R. Barsanti,
Defendants-Appellees.
 No. 85-5489.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1985.
Decided May 6, 1986.
 
 Avon N. Williams Jr., Williams and Dinkins (argued), Richard H. Dinkins, Ronald W. McNutt, Nashville, Tenn., for plaintiff-appellant.
 Cornelia A. Clark, Farris, Warfield & Kanaday, Nashville, Tenn., Lloyd Sutter (argued), King & Spalding, Atlanta, Ga., for defendants-appellees.
 Before KRUPANSKY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 This appeal of an employment discrimination case, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1982 and Supp.1985), and under 42 U.S.C. Sec. 1981 (1982), seeks reversal of awards of costs against the plaintiff-appellant, and of attorney's fees against the plaintiff-appellant and her counsel. Appellant argues that in authorizing these awards of attorney's fees and costs, the district court abused its discretion. For the reasons that follow, we affirm the award of costs against appellant, but reverse both awards of attorney's fees, and remand for further proceedings the award of fees against appellant's counsel.
 
 
 2
 * Plaintiff-appellant Gwendolyn E. Jones (Jones) brought this action against defendant-appellee The Continental Insurance Company (employer) alleging employment discrimination under Title VII and Sec. 1981.[1] After a bench trial on the merits, the district court entered judgment for the employer on all claims in the complaint. Jones v. Continental Corporation, No. 82-3572, slip op. (M.D.Tenn. June 29, 1984).
 
 
 3
 The evidence showed that Ms. Jones, a black woman, had been employed from May, 1977 to August, 1983 at the employer's Nashville office. She had been steadily promoted from her starting position as a rate and code clerk, to senior rate and code clerk (Aug. 14, 1978), to underwriter trainee (Aug. 13, 1979), to associate underwriter (Nov. 3, 1980), and to underwriter (May 4, 1981). There is no dispute that the plaintiff's employment was terminated in August of 1983, following receipt of a letter written by her to the employer's largest local client, an insurance agency, accusing employees of the latter of "hate and prejudices" to Ms. Jones.
 
 
 4
 Ms. Jones sought to prove that, in several actions taken towards her during the period of her employment, her employer was motivated by racial (and secondarily by sexual) prejudice. She claimed to have been repeatedly denied promotions, and to have been denied promotional opportunities--to attend professional workshops and to socialize with clients--that routinely were enjoyed by similarly-situated white employees. She claimed to have been singled-out for showing Amway products on work time, when white employees were permitted to sell goods. She claimed that she was deliberately placed at an inadequately-lighted desk, with her back to all white employees, and that her employer was unresponsive to her requests for better lighting or a new desk location. She claimed to have been the object of racially-motivated profanity by white employees and clients, about which her employer allegedly did nothing. She claimed to have been passed over for promotion to supervising underwriter in favor of a less-qualified white employee (Carol Brown) who transferred from the San Francisco office. While these claims were pending, Jones was discharged, ostensibly for writing an insulting letter to a major client. She then amended her complaint to add the final claim that her termination was racially-motivated, and that the proffered excuse was mere pretext.
 
 
 5
 The district court found that Jones's proof was so insubstantial that she had established a prima facie case of illegal discrimination only as to the Carol Brown transfer. The court found
 
 
 6
 against the plaintiff because of her lack of credibility. The plaintiff assumed her knowledge of her work place was omniscient. Many of her complaints were never communicated to her superiors. Many that were, were picayune. In short, the plaintiff could be a quite petty person who assumed that anything that did not suit her was a product of racial prejudice.
 
 
 7
 Jones v. Continental Corporation, No. 82-3572, slip op. at 4 (M.D.Tenn. June 29, 1984). Jones appealed the district court's dismissal on the merits in a companion case, alleging that the court's failure to find disparate treatment was clear error. We have previously affirmed the district court's judgment on the merits. Jones v. Continental Corporation, 785 F.2d 308, (6th Cir.1986).
 
 
 8
 Following his judgment in favor of the employer, the district judge assessed some attorney's fees against Jones, as a losing party, under 42 U.S.C. Sec. 1988; and some against her counsel, for unreasonably and vexatiously multiplying the litigation, under 28 U.S.C. Sec. 1927, and under the court's inherent powers to punish those who litigate in bad faith, Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The court also taxed costs against the plaintiff. While the court did not hold a hearing prior to these decisions awarding fees and costs, it did receive briefs from both parties, and filed a memorandum. Subsequently, the court by additional memorandum denied motions to alter or amend judgment. Ms. Jones and her counsel appeal the orders assessing fees and costs, and denying their motions to alter or amend judgment.[2]
 
 II
 
 9
 Although the "American Rule" has been and remains that parties to litigation must bear their own attorney's fees, federal courts recognize several exceptions to this general rule. See generally Tarter v. Raybuck, 742 F.2d 977, 984-86 (6th Cir.1984). An award of attorney's fees, whether granted under 28 U.S.C. Sec. 1927, under 42 U.S.C. Sec. 1988, or under the court's "inherent powers," rests in the sound discretion of the trial court. See Bowers v. Kraft Foods Corp., 606 F.2d 816, 818 (8th Cir.1979) (Sec. 1988); United States v. Blodgett, 709 F.2d 608, 610 (9th Cir.1983) (Sec. 1927); Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (court's inherent powers). Similarly, while an award of costs against a losing party is "a normal incident of defeat," Delta Air Lines, Inc. v. August, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981), a court may, of course, in its discretion, choose not to tax costs. Accordingly, our only inquiry as to each aspect of the instant appeal is whether the awards represent an abuse of the trial court's discretion. Tarter v. Raybuck, 742 F.2d 977, 986 (6th Cir.1984).
 
 
 10
 * There is no doubt that a federal district court, in the sound exercise of its discretion, may assess attorney's fees against losing counsel, as well as against a losing party. In Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), the Supreme Court, while finding no statutory authority for such an award, determined that it could be upheld under the court's "inherent powers," upon a finding that an attorney "willfully abuse[d] judicial processes" by conduct "tantamount to bad faith." Id. at 764-66, 100 S.Ct. at 2463-64. Congress subsequently amended 28 U.S.C. Sec. 1927 to grant statutory authority for an award of "the excess costs, expenses and attorney's fees reasonably incurred" due to conduct by an attorney that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. Sec. 1927 (1982) (as amended by Pub.L. 96-349, Sec. 3, 94 Stat. 1156 (Sept. 12, 1980)). The effect of the amendment was to nullify that part of Roadway Express which held that former Sec. 1927 permitted assessment against losing attorneys only of "costs," not of attorney's fees, thus adding a statutory power to the "inherent power" recognized in Roadway Express. 447 U.S. at 757-64, 100 S.Ct. at 2459-63.
 
 
 11
 In the instant case, the district judge based his conclusion that Ms. Jones's attorneys had unreasonably and vexatiously multiplied the litigation on two aspects of the attorneys' conduct. First, the court noted that Jones's counsel had failed to respond timely to the employer's motion to dismiss, which was twice renewed in the course of the proceedings. Appendix 97-98. The original motion was accompanied by a brief, noting inter alia that Jones's complaint failed to specify under which statute (Title VII or Sec. 1981) the individual defendants were being sued, under which statute the sex (as opposed to race) discrimination claims were being brought, and under which statute damages were being requested. Id.[3] The motion to dismiss was accompanied by a letter indicating a willingness to withdraw the motion if Jones would amend her pleadings to eliminate certain defendants, and would "omit the claims discussed in our brief which are not subject to litigation here." Appendix 42. Jones never amended her complaint (except to add parties and claims), and in her eventual response to the motion to dismiss, did not address the motion's request for more specific pleadings. Appendix 284. This last omission took on importance, in the eyes of the court, when Jones's counsel refused to sign a pretrial order that would have simplified the issues for trial. Appendix 97-98.
 
 
 12
 In awarding attorney's fees, the district court concluded that counsel's original "sloppy" pleading, together with their failure to cure it by amendment, was a basis for an award of fees under Sec. 1927. The court also found that the reason Ms. Jones's counsel had refused to sign the pretrial order--purportedly the product of an all-day negotiating session between both sides--was unrelated to the substance of the proposed order, but rather was an attempt to pressure the employer's counsel into waiving rights to certain attorney's fees. Id. The district court concluded, based on this second finding, that the refusal to execute the pretrial order was an additional basis for an assessment of attorney's fees against Jones's counsel under Sec. 1927. Jones's counsel do not argue that the pretrial order would not have reduced the number or complexity of issues to be tried; rather, counsel contend only that there is no evidence that they refused to approve the order with the improper motive found by the district court.
 
 
 13
 "Unreasonable and Vexatious Multiplication" of Litigation
 
 
 14
 This circuit has yet to construe the meaning of the "unreasonable and vexatious multiplication" standard of Sec. 1927, or of the "bad faith" standard of Roadway Express. Cf. Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226, 1228-34 (6th Cir.1984) (en banc). Some courts have concluded that an assessment under Sec. 1927, like one under Roadway Express's "inherent powers" standard, requires a finding that the attorney acted either with recklessness or in bad faith. Suslick v. Rothschild Securities Corp., 741 F.2d 1000, 1006 (7th Cir.1984) (bad faith); United States v. Blodgett. 709 F.2d 608, 610 (9th Cir.1983) (recklessness or bad faith). However, some opinions have used language indicating that the "bad faith" requirement is limited to the court's inherent powers, and that the "unreasonable and vexatious multiplication" requirement of the amended statute is a different and lower standard. Lewis v. Brown & Root, Inc., 711 F.2d 1287, 1292 (5th Cir.1983), aff'd in part on reconsideration, 722 F.2d 209 (5th Cir.), cert. denied, 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). This standard has been found to be met when an attorney, though not guilty of conscious impropriety, "intentionally ... [pursues] a claim that lacks plausible legal or factual basis." Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 226-27 (7th Cir.1984). Our court's most recent opinion appears to endorse a distinction between the two powers of the court, with the bad faith standard applying to the court's inherent powers, and the lower "unreasonable and vexatious multiplication" standard applying to assessments under Sec. 1927. Reynolds v. Humko Products, 756 F.2d 469, 473 (6th Cir.1985).
 
 
 15
 We are persuaded that the Fifth and Seventh Circuits, in Lewis and Knorr-Brake, have accurately discerned the meaning of Sec. 1927. To hold that subjective "bad faith" remains as necessary under amended Sec. 1927 as under Roadway Express would be to assume that the amendment added nothing to the "inherent powers" recognized in that case. Since we must assume that Congress intended the post-Roadway Express change in Sec. 1927 to have effect, we hold that 28 U.S.C. Sec. 1927 authorizes a court to assess fees against an attorney for "unreasonable and vexatious" multiplication of litigation despite the absence of any conscious impropriety. An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious." Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney.
 
 
 16
 Applying this standard to the case before us, we are unable to perceive anything in the record that would support a conclusion that Jones's counsel knew or should have known that failure to amend their pleadings would retain frivolous claims in the litigation, or needlessly obstruct the litigation of nonfrivolous claims. Likewise, we can find no basis in the record for the district court's determination that the reason for failing to approve the pretrial order was to pressure the employer's counsel into waiving certain attorney's fees. We treat these two bases for the district court's award in turn.
 
 
 17
 a. failure to amend complaint--
 
 
 18
 The employer's counsel argues, and the district court seems to have concluded, that Jones's pleadings contained "glaring legal deficiencies," and that the failure to correct those deficiencies by amendment was "unreasonable and vexatious." Appendix 97-98. Specifically, the district court relied on three deficiencies in the complaint: failure to specify under which statute the sex (as opposed to race) discrimination claims were brought; failure to specify under which statute the individual defendants (as opposed to the employer) were being sued; and failure to specify under which statute damages of $1,000,000.00 were sought. Id.
 
 
 19
 Jones's complaint begins by identifying the foundations for the lawsuit as 42 U.S.C. Secs. 1981 and 2000e, and the thirteenth amendment. Appendix 111. The complaint then alleges facts and concludes with several requests for relief. Id. 117-18. The district court's conclusion that the failure to clarify the "deficiencies" noted above constituted "unreasonable and vexatious multiplication" of the litigation must rest on the extent to which the employer's counsel was burdened with unnecessary research or preparation as a result of the supposed lack of specificity occasioned by the complaint's format. We cannot agree that these so-called deficiencies were so substantial, confusing or otherwise burdensome that failure to amend them met the "unreasonable and vexatious" standard we have described.[4]
 
 
 20
 To begin with, federal law is quite clear that Sec. 1981 prohibits only race discrimination, not sex discrimination. Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The most cursory research thus would have revealed that the sex discrimination claims were properly brought only under Title VII. In light of the clarity of the law on this point, the only tenable reading of Jones's complaint is that sex discrimination claims were brought only under Title VII; no significant attorney time could possibly have been spent preparing a defense to any hypothetical Sec. 1981 sex discrimination claim.
 
 
 21
 Similarly, the law is clear that individuals may be held liable for violations of Sec. 1981, e.g., Taylor v. Jones, 653 F.2d 1193, 1200 (8th Cir.1981) ("Section 1981 applies to all types of racial discrimination, public or private"); Faraca v. Clements, 506 F.2d 956, 957 (5th Cir.1975) (individual director held liable while corporation exonerated); Vietnamese Fishermen's Association v. Knights of Ku Klux Klan, 518 F.Supp. 993, 1008 (S.D.Texas 1981) ("private citizens are proper defendants" in suits under Sec. 1981), and as "agents" of an employer under Title VII, e.g. Owens v. Rush, 636 F.2d 283 (10th Cir.1980); Robson v. Eva's Super Market, Inc., 538 F.Supp. 857, 862-63 (N.D.Ohio 1982); Munford v. James T. Barnes & Co., 441 F.Supp. 459, 466 (E.D.Mich.1977); Compston v. Borden, Inc., 424 F.Supp. 157, 158 (S.D.Ohio 1976). Since the individual employees sued were at least arguably "agents" of the employer, we think it obvious that Jones's counsel were intentionally and properly seeking recovery against the individuals under both statutes. Thus, we are at a loss to understand how failure to amend to "clarify" this point could have "multiplied" this aspect of the litigation.
 
 
 22
 Finally, this circuit has long held that Title VII does not authorize general compensatory damages; it authorizes only back pay and other equitable relief, making clear that the request for "damages" of $1,000,000.00 applied only to the Sec. 1981 claim. E.g. Harrington v. Vandalia-Butler Board of Education, 585 F.2d 192 (6th Cir.1978), cert. denied, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979). See generally Annot., 48 A.L.R.Fed. 330 (1980).
 
 
 23
 In short, while the amended complaint certainly is a boilerplate effort, and certainly could have been more artfully drawn, its meaning is sufficiently clear as written. The ambiguities argued by employer's counsel are so easily resolved that failure to amend cannot be characterized as unreasonable and vexatious multiplication of the litigation. We therefore hold that any award of attorney's fees based solely on failure to amend the complaint as requested was error.
 
 
 24
 b. failure to sign pretrial order--
 
 
 25
 It does not follow, however, that counsel's failure to sign the pretrial order limiting the issues to be tried could not have amounted to a violation of Sec. 1927. Even a well-pleaded complaint may contain issues or claims that need not be tried, and should be resolved by stipulation of opposing counsel prior to trial. When counsel reach agreement on such a narrowing of issues, they reduce the amount of litigation remaining. If, after agreeing to such a narrowing of issues, one attorney then refuses to sign the pretrial order unless his or her adversary waives a wholly separate claim or right, that refusal necessarily multiplies the issues that must be tried. The refusal to approve such an agreed-upon order amounts to bad faith, and thus would justify an award of attorney's fees under the court's inherent powers or under Sec. 1927.
 
 
 26
 The record in the instant case provides no support for the conclusion that counsel's refusal to sign the pretrial order was motivated by a bad faith desire to pressure the employer into waiver of rights to attorney's fees. The employer cites the transcript of a hearing held on December 14, 1982 in support of the district court's finding; yet at no point in the transcript of that hearing was Jones's counsel questioned about this issue. See Appendix 155-67. Indeed, in his decision to proceed without a pretrial order, the district judge primarily criticized counsel's failure to comply with discovery. Id. This incomplete record thus will not support an inference that refusal to sign the pretrial order was undertaken in bad faith. We therefore agree with Jones's counsel that a hearing to resolve this factual issue must precede any award of attorney's fees for failure to sign the pretrial order.
 
 B
 
 27
 An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct. The Supreme Court has indicated that:
 
 
 28
 a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable or groundless ... [a]nd, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with attorney's fees incurred by the defense.
 
 
 29
 Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978) (emphasis in original). See also Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (Christiansburg test applies to 42 U.S.C. Sec. 1988); Tarter v. Raybuck, 742 F.2d 977, 984-88 (6th Cir.1984).
 
 
 30
 In the instant case, the district court concluded that Jones's claim for wrongful termination was obviously frivolous from the first. Jones unquestionably was terminated almost immediately after accusing an employee of her employer's largest local client of "hate and prejudices" in a letter. Reasoning that after such a letter, "the defendants would have been completely justified in firing the plaintiff," Appendix 99, the district court assessed against Jones fees incurred in defending that claim only. Id.
 
 
 31
 These remarks fall short of a finding that Jones's termination claim was frivolous, unreasonable or groundless, and indeed, the existing record is inadequate to support such a finding. In a disparate treatment case, the question before the court is not whether the employer would have been justified in firing the plaintiff for her conduct; the question is whether in fact the plaintiff's firing was racially-motivated. The district court found that it was not, and this finding is not clearly erroneous. But we think it undeniable that Ms. Jones presented a tenable claim. She was fired during the period when her trial was in recess. Thus, her employer was fully aware that she was suing it for a variety of alleged discriminations. It certainly is plausible that in that situation, the employer might have been looking for any pretextual excuse to terminate Jones's employment. In fact, Jones attempted to prove such pretext, by introducing evidence that other white employees had also made errors costing the company money, but had not been terminated.
 
 
 32
 Here, the record contains nothing to indicate that Ms. Jones was completely unjustified in believing her discharge--in the middle of protracted litigation against her employer--to be the result of racial or retaliatory motives. That the district court found Jones's contention to be erroneous as a factual matter, and concluded that there was no pretext in her firing, does not render her claim frivolous, unreasonable or groundless. We therefore reverse the award of attorney's fees against Jones.
 
 C
 
 33
 Under Fed.R.Civ.P. 54(d), the trial court, in the sound exercise of its discretion, may tax the costs of litigation against a losing party. Indeed, the Supreme Court has recognized that the rule, which provides that costs "shall be allowed as of course to the prevailing party unless the court otherwise directs," signals the general proposition that "liability for costs is a normal incident of defeat." Delta Air Lines, Inc. v. August, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981) (emphasis added).
 
 
 34
 In the present case, Jones's argument against being required to pay costs is twofold. First, she argues that taxing costs against a losing civil rights plaintiff would conflict with the remedial purposes of Title VII. Second, she argues that in any event, she should be excused from paying costs due to her indigency.
 
 
 35
 The first argument is meritless, especially in a case of so little substance. Jones has cited no authority to support this argument, and we are aware of none.
 
 
 36
 Jones's second argument also lacks authority. While the Seventh Circuit has recognized that refusal to tax costs against an indigent plaintiff is a permissible exercise of discretion by the district court, Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1165 (7th Cir.1983), Jones has cited no case reversing an assessment of costs on the basis of indigency. Here, the district judge, after a review of Jones's affidavit, concluded that "the plaintiff has sufficient assets to take out a loan to pay the judgment without being rendered destitute." Appendix 108. While perhaps the district court might have considered the question of indigency more fully for the record, we are unable to characterize this part of his decision as an abuse of discretion.
 
 III
 
 37
 For the reasons stated in our opinion, we REVERSE the judgment assessing attorney's fees against Jones's counsel, and REMAND this claim for further proceedings not inconsistent with this opinion.
 
 
 38
 We further REVERSE the judgment assessing attorney's fees against Jones herself, and REMAND this claim for dismissal.
 
 
 39
 Finally, we AFFIRM the judgment taxing costs against Jones.
 
 
 
 [1]
 Plaintiff actually added her employer, The Continental Insurance Company, to an earlier version of the complaint against its parent corporation, The Continental Corporation (Continental), and two individual supervisory employees. We have previously affirmed the district court's conclusion that the only defendant with potential liability was the employer insurance company, and that court's dismissal of the claims against the other named defendants. See Jones v. Continental Corp., 785 F.2d 308 (6th Cir.1986)
 
 
 [2]
 Jones's counsel have not argued that the number of hours claimed or rates charged by the employer's counsel were unreasonable or excessive if the work for which fees were requested is found to have been justified
 
 
 [3]
 We note that the employer moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), rather than, as would have been proper, for a more definite statement under Rule 12(e). The subsequent course of the litigation indicates that the district court treated the motion as brought under Rule 12(e)
 
 
 [4]
 We note that in the letter to Jones's counsel accompanying a copy of the motion to dismiss, the emphasis was clearly on the contention that Jones had improperly sued her employer's parent corporation and the individual employees. Appendix 42. But the district court specifically held that such was not a basis for awarding fees against counsel. Appendix 97. Moreover, the district court never ordered Jones to amend her complaint, or otherwise ruled on the motion to dismiss prior to trial