**Harold L. BYNUM, Plaintiff,**

v.

**MICHIGAN STATE UNIVERSITY, Cecil Mackey, James Sheppard, and Robert Asman, Jointly and Severally, Defendants.**

**No. G84–70 CA5.**

United States District Court,
W.D. Michigan, S.D.

June 22, 1987.

Frances C. McIntyre, Detroit, Mich., Daria N. Schlega, East Lansing, Mich., Godfrey J. Dillard, Smith & Dillard, P.C., Detroit, Mich., for plaintiff.

Michigan State University, Office of Legal Affairs, by Byron H. Higgins, East Lansing, Mich., Varnum Riddering, Schmidt & Howlett by Thomas J. Barnes, Charles S. Mishkind, Grand Rapids, Mich., for defendants.

## OPINION GRANTING PARTIAL ATTORNEY FEES

HILLMAN, Chief Judge.

Plaintiff Harold L. Bynum, a black, supervisory employee of Michigan State University ("MSU"), filed suit on January 29, 1984, alleging violations of Title VII and 42 U.S.C. § 1981. Plaintiff claimed that he was discriminatory disciplined and passed over for promotion because he was black, and in retaliation for a complaint that he filed with the Michigan Department of Civil Rights. On July 21, 1986, this court granted summary judgment for defendants.

**1.** Any portion of defendants' motion based on the inherent powers of the court is denied. Defendants do not address this alleged basis for relief in their brief nor do they argue that plaintiff or his counsel acted in bad faith, a prerequi-

Currently before the court is defendants' motion for costs and attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k), 42 U.S.C. § 1988, Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent powers of the court.[1] Throughout the course of his suit, Mr. Bynum worked with three attorneys. Francis McIntyre, his first attorney, filed the complaint. Daria Schlega, whose tangential role in the suit is detailed below, became involved in the suit sometime in the winter of 1985. Godfrey Dillard was hired by plaintiff when Ms. McIntyre withdrew in September of 1985. Defendants now seek an award from plaintiff Bynum and attorneys McIntyre and Schlega. The court held a hearing on this matter on October 20, 1986.

### I. Factual Background

On April 17, 1985, following deposition of plaintiff Bynum, defendants wrote to attorney McIntyre summarizing the reasons that they thought plaintiff's claim lacked a basis in either law or fact. On June 21, 1985, defendants moved for dismissal for failure to state a claim or, in the alternative, summary judgment. The motion, which expanded upon the legal arguments summarized in the April 17 letter, contained 46 exhibits including sworn affidavits from eight MSU employees who had worked with and supervised plaintiff and pertinent portions of plaintiff's MSU personnel records. On June 27, 1985 the court received a letter from McIntyre stating that she had moved to California. On July 9, 1985, defendants filed a motion for attorney fees and costs. Attorney McIntyre requested and received an extension to August 4, 1985 to respond to those motions on behalf of plaintiff and herself.

On July 28, 1985, attorney Daria Schlega filed a notice of appearance on behalf of plaintiff and an agreement between herself and attorney McIntyre dated January 8, 1985, stipulating Ms. Schlega as co-counsel.

site of sanctions pursuant to the courts inherent powers. *Shimmon v. Intern. Union of Operating Eng., Loc. 18,* 744 F.2d 1226 (6th Cir.1984) (*en banc*).

By order of August 19, 1985, the pending motions were scheduled for hearing on September 16, 1985. On September 4, 1985, McIntyre moved to withdraw as counsel for plaintiff on the grounds that the attorney-client relationship had deteriorated to the point where she could no longer represent plaintiff. By order of September 20, 1985, Ms. McIntyre was permitted to withdraw without prejudice to defendants' rights to seek attorneys' fees. Plaintiff was given 30 days to engage the services of replacement counsel, and it was ordered that failure to do so would result in a dismissal of the case. On October 8, 1985, McIntyre filed an answer to defendants' motion for attorney's fees and costs.

On October 23, 1985, the court granted plaintiff an additional two weeks to find replacement counsel. Finally, on November 9, 1985, attorney Godfrey Dillard entered an appearance on behalf of plaintiff and on December 11, 1985, he moved to enlarge the discovery deadline. On January 10, 1986, plaintiff filed an affidavit stating that if given additional discovery time, he had witnesses, including Robert Lockhart and Elizabeth Duberg, whose testimony would establish genuine issues of material fact that would defeat defendants' pending summary judgment motion. By an order dated January 31, 1986, the discovery deadline was extended to May 1 and plaintiff was given until May 15 to respond to defendants' motion to dismiss and for summary judgment. In February, defendants filed the sworn affidavits of Robert Lockhart and Elizabeth Duberg, which supported defendants' position, rather than plaintiff's.

On April 21, 1986, attorney Dillard informed the court that after interviewing witnesses on behalf of plaintiff Bynum and reviewing the record of the case, he had advised plaintiff not to oppose defendants' motion to dismiss and for summary judgment. Plaintiff did not oppose the motion and on July 21, 1986, I granted summary judgment on the grounds that there were legitimate, non-discriminatory reasons for all actions taken by defendant with respect to plaintiff.

On October 9, 1986, defendants filed an amended motion for fees and costs. The court subsequently sent notice to attorneys McIntyre, Thomas Loeb (McIntyre's local counsel), Schlega, Dillard, and defense counsel that a hearing on the motion for fees and costs would be held on October 20, 1986. Attorneys Schlega and Dillard replied. Neither attorney McIntyre nor Loeb filed a brief or appeared for the hearing. Apparently attorney McIntyre rests on her 1985 reply to defendants' original motion for fees.

## II. Standard

Under Section 706(k) of Title VII, the court may award attorneys' fees to the prevailing defendant in a Title VII case "upon a finding that the plaintiff's action was frivolous, unreasonable or, without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Supreme Court warns, however, that judges must not engage in post-hoc reasoning to justify such an award. *Id.* at 422, 98 S.Ct. at 700. "Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* "Decisive facts may not emerge until discovery or trial." *Id.* Furthermore, the Sixth Circuit has stated that imposition of attorneys' fees against a losing party in a civil rights suit "is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).

In *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Supreme Court held that the *Christianburg* standards for Title VII sanctions also apply to the fee provision of Section 1988. *See also, Tartar v. Raybuck*, 742 F.2d 977, 985–86 (6th Cir.1984).

Pursuant to 28 U.S.C. § 1927, the court may also impose attorneys fees against losing counsel in a federal case. That section provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees reasonably incurred because of such conduct.

In determining whether fees are to be assessed under this provision, the courts have adopted an objective standard. Fees are properly assessed where an attorney knows or reasonably should have known that a claim is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. "Conscious impropriety" is not a prerequisite. *Jones, supra* at 1230. As the Sixth Circuit recently stated:

An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious."

*Id.*

Finally, sanctions may be imposed on either attorneys or their clients under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The 1983 amendment to the Federal Rules of Civil Procedure "stresses the need for some prefiling inquiry into the facts and the law to satisfy the affirmative duty imposed by the rule." *Albright v. Upjohn Co.*, 788 F.2d 1217, 1221 (6th Cir.1986). The court must assess the affirmative conduct of the attorney, *Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252, 261 (E.D. Mich.1985), against a standard of "reasonableness" under the circumstances. *Notes of Advisory Committee on Rules.* In administering this rule courts must avoid hindsight and instead test a signer's conduct by inquiry into what was reasonable at the time the paper was filed. Factors such as the amount of time available for investigation; whether the signing attorney had to depend on his or her client for the information on which the pleading was based; and whether the pleading was based on a plausible view of the law should be taken into account in determining what is reasonable. *Id.*

### III. Discussion

#### A. Attorney Schlega

■ Of the three individuals against whom defendants seek fees and costs, Ms. Schlega is the only one against whom I do not think it appropriate to impose sanctions. Ms. Schlega never signed any pleadings or motions on behalf of plaintiff Bynum. Furthermore, according to Ms. Schlega's brief and her representations at the hearing, she never signed a fee agreement with plaintiff or attorney McIntyre. Payment for her services was made through the pre-paid legal services program of the Michigan Education Association Legal Services Plan, to which plaintiff's wife belonged. Ms. Schlega, who states that she has known plaintiff for many years, alleges that plaintiff came to her because he was "experiencing difficulty contacting Ms. McIntyre." Her services to Mr. Bynum were limited to attending his deposition, offering him an opportunity to talk about the difficulties he had with attorney McIntyre, requesting that defense counsel send her copies of all the papers sent to Ms. McIntyre, and the writing of several letters to Ms. McIntyre on behalf of plaintiff. In particular, Ms. Schlega assisted plaintiff in obtaining a copy of the summary judgment motion allegedly because attorney McIntyre had moved to California

without showing it to him. (Although nothing in the record indicates exactly when Ms. McIntyre left Michigan, it should be noted that six days after the summary judgment motion was filed, Ms. McIntyre advised the court that she had moved.) Defendants never served the motion on attorney Schlega.

The filing of a formal appearance on behalf of a client and the stipulation of co-counsel are not steps to be taken lightly. It is an indication that the signing attorney has reviewed the file and agreed to accept responsibility for a client's claims. The fact that Ms. Schlega never signed a pleading or motion, never appeared to be formally recognized by defense counsel in that they did not send her a copy of defendants' motion to dismiss, and that plaintiff's third attorney (hired after Ms. McIntyre withdrew) never consulted with Ms. Schlega, together with the fact that Ms. Schlega is a relatively recent law school graduate with little practical experience, weighs in favor of a finding that her behavior was not unreasonable and therefore not sanctionable. Furthermore, the services she provided to plaintiff, accompanying him to a deposition and obtaining copies from defendants of the papers which were being sent Ms. McIntyre, did not impose significant expense on defendants. Thus, I am denying defendants' motion with respect to attorney Schlega.

I would note, however, that Schlega believes that defendants may be seeking fees and costs against her in retaliation for another potential civil rights claim in which she is involved. In fact, in her reply to defendants' motion for fees and costs, attorney Schlega claims that defendants are harassing her and seeks $30,000.00 in damages. However, she presents no evidence to support her claim. The fact that she presents this argument to the court further supports my conclusion that Ms. Schlega does not understand the gravity of filing a stipulation of co-counsel in a federal case. She should be forewarned that inexperience cannot long act to relieve her of responsibility for such an act.

### B. Plaintiff Bynum

As regards defendant's motion for fees under Title VII and Section 1988, I am not satisfied that the claim underlying this suit, that plaintiff suffered from disparate treatment on account of his race, was "frivolous, unreasonable, or without foundation" as defined by *Christiansburg, supra,* at 421, 98 S.Ct. at 700. Plaintiff presented the three documents to the court that he brought to attorney McIntyre on first inquiring about the possibility of a suit. Although the question is not without doubt, I believe that those documents, which contain evidence of cost overruns incurred by white employees, together with the information sworn to by plaintiff in his complaint, make out a prima facia case of disparate treatment when viewed from the time of the filing of his complaint.

With respect to promotion, plaintiff presented a tenable claim of disparate treatment. Plaintiff is a member of a racial minority, he applied and allegedly was qualified for a job for which MSU was seeking applicants, despite his apparent qualifications he was rejected, and after his rejection MSU sought applications from persons of plaintiff's alleged qualifications and in fact promoted at least one of the white individuals who had incurred cost overruns. *See McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Similarly, regarding plaintiff's claims of disparate treatment in the meting out of discipline, the documents that plaintiff brought to attorney McIntyre provide some foundation for his assertion that he was treated differently than similarly situated white employees. Although the affidavits and exhibits submitted by the defendants in their summary judgment motion eventually led me to conclude that there were "legitimate, non-discriminatory reasons for all action taken by defendants with respect to plaintiff," (Opinion, July 21, 1986 at 4), the dismissal of plaintiff's entire case was not a foregone conclusion at the time the complaint was filed and therefore, cannot be characterized as frivolous, unreasonable

or completely groundless under Title VII or Section 1988. *See, Jones, supra,* at 1233.

Furthermore, defendants' request for attorneys' fees against plaintiff must be seen in light of the fact that plaintiff did not pursue his claim to trial. After defendants had marshalled the evidence against him in a summary judgment motion, plaintiff could not be persuaded by his first attorney to drop his suit. However, in no small part, this may have been due to the deteriorating relationship between Ms. McIntyre and Mr. Bynum. When, after some investigation, plaintiff's second attorney advised him not to oppose defendants' motion for summary judgment, plaintiff dropped the suit.

■ While I do not think Section 706(k) of Title VII or Section 1988 mandate the imposition of attorneys' fees and costs on the plaintiff, I do believe that sanctions must be imposed, pursuant to Rule 11, for certifying false statements in his complaint. Evidence presented by defendants in their summary judgment motion proves that plaintiff lied about his past employment experience on his job application. MSU's job application requires applicants to certify that the information provided therein is true and constitutes a "full and complete disclosure." It asks applicants to list all jobs held and to disclose whether they were "suspended or discharged from any position(s)." It further states that "any incorrect, incomplete, or false statements or information furnished by [the applicant]" can result in discharge anytime after employment. (Defendants' Motion to Dismiss and/or for Summary Judgment, ex. 2.) In deposition it came out that plaintiff failed to list three previously held jobs from which he had been suspended or terminated for work related reasons. (Bynum Deposition, 31–32, 34, 35, 37, 29, 97–98, 99–100.) Plaintiff not only certified to MSU that his employment application was

complete, he swore to this court in his complaint that he was qualified to hold his current job when, by virtue of having falsified his application, he was not. (Complaint, ¶ 28.)

Unlike the fees and costs provisions of Title VII and Section 1988, imposition of Rule 11 sanctions does not turn on a finding the suit was entirely frivolous. Rather, Rule 11 mandates the imposition of sanctions on a finding that a pleading certified to be true by the signature of an attorney or her client, is not well grounded in fact. Here, plaintiff's certified statement in his complaint that he was qualified for the job of production supervisor (the job for which he was hired) was not well grounded in fact. Technically, it might also be said to have rendered his entire claim frivolous as falsification of his application would have barred his recovery under Title VII regardless of whether he could have sustained his burden of proof regarding all other elements of the claim. *King v. TWA, Inc.,* 738 F.2d 255, 258 (8th Cir.1984). However, this is a legal conclusion of which the court cannot expect a lay person to know and therefore cannot be used to as a basis for finding plaintiff's claim groundless under the standard of Section 1988 and Title VII. Imposition of fees pursuant to either of these provisions, under the circumstances of this case, would chill civil rights plaintiffs who have some objective evidence to support their claims and can make out a prima facia case, from pursuing their rights for fear that they will not only be barred by a legal theory based on facts that they did not realize were relevant, but will also consequently be subject to attorney's fees and costs.

### C. Attorney McIntyre

■ As discussed above, I believe that the documents plaintiff presented to Ms. McIntyre,[2] together with his representa-

---

**2.** Attorney McIntyre would have been well advised to submit to the court copies of those documents. As it turned out the court was able to obtain them through plaintiff. However, plaintiff via his new counsel, did not file copies before the hearing and it was only on explicit inquiry of the court that they were produced. It

is those documents that allowed this court to determine that the complaint was not wholly frivolous. Given that Ms. McIntyre did not attend the hearing on this motion or update her brief filed in response to defendants' first motion for fees, an effort to produce the underly-

tions, made out a prima facia case of discrimination at the time that the complaint was filed. Fees and costs are therefore not available against Ms. McIntyre under Title VII or Section 1988. Neither do I believe that Ms. McIntyre can be held liable under Rule 11 or Section 1927 for the misrepresentations of fact made by plaintiff regarding his employment background or for the fact that many of the witnesses that he said would support him, provided affidavit testimony favorable to defendants. Ms. McIntyre argues that litigation strategy in employment discrimination cases often counsels against the kind of early questioning of witnesses employed by a defendant that might have revealed the factual problems with plaintiff's case. I agree.

Furthermore, attorney McIntyre asserts that after defendants filed their summary judgment motion, she attempted to persuade plaintiff to drop the case. She states that her withdrawal was in significant part based on plaintiff's refusal to drop his claim. Accepting this as true, costs and fees incurred after her withdrawal cannot be imposed on Ms. McIntyre under Rule 11 or Section 1927. Nevertheless, these provisions do mandate the imposition of some sanctions on Ms. McIntyre.

■ Certain portions of plaintiff's complaint demonstrate a complete failure to make adequate inquiry into the law before filing suit. This amounts to the pursuit of a nonfrivolous claim through multiplicative litigation tactics. Citing their motion to dismiss as support, defendants, in their amended motion for fees, state that McIntyre proceeded in disregard of applicable legal principles with respect to plaintiff's claims. I am not convinced that all of the legal principles that defendants allege plaintiff ignored amount to established law. Several are arguable points made by analogy to Section 1983 and others are based on law not yet clearly established in the Sixth Circuit. It is possible that in the absence of the factual evidence on which I based my decision to grant summary judgment, these arguments may have carried a motion to dismiss. However, sanctions under ing documents for the court would have been

Rule 11 and Section 1927 for failure to make adequate inquiry into the law can only be imposed when no good faith argument can be made for the modification or extension of a given principle. Giving plaintiff every benefit of the doubt, I must nevertheless conclude that three of the legal assumptions underlying the complaint cannot reasonably be justified by the assumption that attorney Schlega intended to argue for an extention of existing law.

First, part of plaintiff's claim is based on disciplinary suspensions in March and May of 1983. (Complaint, ¶¶ 15, 18.) Before bringing this suit, plaintiff filed grievances regarding these suspensions and eventually entered into a settlement agreement with his union and MSU. (Defendants' Motion to Dismiss and/or for Summary Judgment, ex. 31.) In the Sixth Circuit an employee who accepts the terms of a settlement agreement cannot later sue his employer for additional benefits. *EEOC v. McLean Trucking Co.*, 525 F.2d 1007, 1010 (6th Cir.1975). Despite this clear rule, attorney McIntyre cited these suspensions as part of the factual basis of plaintiff's suit.

Attorney McIntyre's second substantial error was in failing to note and follow certain basic jurisdictional requirements regarding Title VII actions. As a prerequisite of filing a Title VII action, an aggrieved party must file a charge with the EEOC "within 300 days after the alleged unlawful employment practice occurred." 42 U.S.C. §§ 2000e–5(e), (f). Discriminatory acts that are not raised in a timely charge cannot be considered in a later suit based on Title VII. *United Airlines v. Evans*, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977). Plaintiff filed his first EEOC charge on March 24, 1983. Thus, acts of defendant that predate May 20, 1982 are beyond the scope of this lawsuit. Nevertheless, the factual basis for plaintiff's promotion claim cited in paragraphs 12, 13, 29, 32, and 33 took place before May 20, 1982.

Ms. McIntyre's last substantial error is contained in paragraph 26 of the complaint. helpful.

There she cites several events that took place after plaintiff filed his last EEOC charge. Since they were not raised before the EEOC, and since the defendants did not waive this requirement by failing to object to their inclusion, they cannot properly be considered by the court. 42 U.S.C. §§ 2000e–5(e), (f). *See also, Zangrillo v. Fashion Institute of Technology*, 601 F.Supp. 1346, 37 F.E.P. 162, 164 (S.D.N.Y. 1985).

## IV. Imposition of Sanctions

While a violation of Rule 11 requires imposition of sanctions, the type of sanction imposed rests within the discretion of the court and may range from a reprimand to the payment of attorneys' fees. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1175 (D.C.Cir.1985). Even if the court decides to assess attorneys' fees, the prevailing party is not automatically entitled to full reimbursement of all its expenses. The equities of the situation must be considered in order to ensure the deterrence of baseless litigation while avoiding the financial ruin of litigants and attorneys. *Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252, 262 (E.D.Mich.1985).

Section 1927 empowers the court to impose upon counsel the excess costs, expenses and attorneys' fees reasonably incurred by his or her multiplication of the proceeding.

The size of the sanction imposed on Attorney McIntyre would most appropriately be measured by the degree to which her failure to research certain areas of the law increased defendants' fees and costs. With this in mind I have scrutinized the detailed time sheets provided the court by defendants' counsel. However, I have found it impossible to accurately determine the exact degree to which McIntyre's three major errors contributed to defendants' costs and fees. By and large, attorney McIntyre's errors affected defendants arguments for dismissal. Thus, her mistakes do not entitle the defendants to the full $19,375.00

expended by their counsel in preparing the "Motion to Dismiss and/or for Summary Judgment."[3] However, even if I could determine from defendants' time sheets how much time was spent on the portion of their motion seeking dismissal and how much on the portion seeking summary judgment, only a fraction of the costs of preparing the former can appropriately be assessed against McIntyre. Thus, the sanction imposed is by necessity not too closely tied to defendants' fees and costs and must perhaps rest more heavily on Rule 11 than on Section 1927 for its justification.

Sanctions against attorney McIntyre are imposed in the amount of $1,500.00. This equals slightly more than one tenth of one half of the cost of preparing the "Motion to Dismiss and/or for Summary Judgment." It should be noted that attorney McIntyre was paid $750.00 by plaintiff Bynum. Therefore, arguably half of the sanction is subsidized by plaintiff.

With respect to imposition of Rule 11 sanctions against plaintiff Bynum, there is no need to tie them to fees. Here I believe a sanction of $500.00 will adequately punish plaintiff for his misrepresentations to the court and deter him from similar actions in the future.

In conclusion, defendants motion for cost and attorneys' fees is denied with respect to Daria Schlega. With respect to Francis McIntyre it is granted pursuant to Rule 11 and Section 1927 in the amount of $1,500.00. It is also granted with respect to plaintiff Bynum in the amount of $500.00 pursuant to Rule 11.

---

**3.** I can't help noting the irony that it apparently took defense counsel $19,000.00 worth of billable legal time to prepare a motion and brief to dismiss a suit they now characterize as "frivolous and groundless."