952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
DETROIT-MACOMB HOSPITAL CORP. a/k/a Macomb Hospital Center,
Defendant-Appellee.
 Nos. 91-1088, 91-1278.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1992.
As Amended Jan. 27, 1992.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and RUBIN, District Judge.*
 KENNEDY, Circuit Judge, delivered the opinion of the Court as to Parts I and II and a dissenting opinion in Part III. RUBIN, District Judge, delivered a separate opinion announcing the decision of the Court in Part III in which JONES, Circuit Judge joined.
 KENNEDY, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission (EEOC) appeals the District Court's grant of Detroit-Macomb Hospital's (Hospital) summary judgment motion and order awarding attorney's fees to the Hospital. The EEOC alleged that the Hospital discriminated against two employees on the basis of sex and pregnancy by refusing to accommodate their pregnancy related disabilities. We AFFIRM the District Court's order of summary judgment. The majority of the Court AFFIRMS the order awarding attorney's fees to the defendant.
 
 I.
 
 2
 Detroit-Macomb Hospital Corporation owns two hospitals, one of which is Macomb Hospital Center. Macomb Hospital Center is an acute care hospital. In March of 1987, a part-time nurses aide, Theresa Janowicz, declined to deliver a tray into a isolation room. Janowicz was pregnant and was concerned about the health of the fetus. The nursing supervisor told her to get a medical restriction from entering isolation rooms so that she would not endanger her job for refusing a work assignment. Janowicz obtained a restriction. She was then contacted by the Director of Nursing, Leona Weertz, who told her that the Hospital did not allow its staff to work with restrictions that interfered with her job. Janowicz was given the option to rescind the restriction and, when she declined, was placed on an involuntary leave of absence until six weeks after the birth of her child.
 
 
 3
 Charlotte Pierog-Manuel worked as a full-time licensed practical nurse at Macomb Hospital. In July 1987, she too obtained a doctor's note which stated that, due to her pregnancy, she should not enter isolation rooms. Leona Weertz placed Pierog-Manuel on an involuntary leave of absence when Weertz learned of the medical restriction and Pierog-Manual declined to rescind the restriction. Pierog-Manual did not return to work until April 1988, eight weeks following the birth of her child.
 
 
 4
 The Hospital has a policy which places employees on medical leave if they are placed under a temporary medical restriction which interferes with their job duties. Persons under a temporary medical disability are not allowed to change job categories for the duration of the disability. In the case of permanent disability, a job transfer is allowed under certain circumstances. The parties agree that absent a written medical restriction, the involuntary leave would not have been necessary because the staff would have worked the problem out among themselves. Other pregnant workers who do not put their restrictions in writing have continued to work throughout their pregnancies. On the other hand, non-pregnant workers with temporary disabilities and medical restrictions have been placed on disability leave similar to Janowicz's and Pierog-Manuel's leave.
 
 
 5
 On April 26, 1990, the EEOC filed a complaint alleging that the Hospital violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. by treating employees with medical restrictions related to pregnancy differently than employees with other medical restrictions. The District Court orally granted the Hospital's motion for summary judgment. Subsequent to the District Court decision, the Hospital filed a motion for attorney's fees. The District Court issued a written order awarding fees in the amount of $20,814.50 to the Hospital. The EEOC filed timely appeals of both orders.
 
 II.
 
 6
 We review a grant of summary judgment de novo. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989); Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians, 854 F.2d 144, 146 (6th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed.R.Civ.P. 56(c). Summary judgment is appropriate in sex discrimination cases where the plaintiff has failed to prove a prima facie case or where the evidence is insufficient to support an inference that the employer's articulated reason for the different treatment was in fact a pretext for discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Canitia v. Yellow Freight System, Inc., 903 F.2d 1064 (6th Cir.), cert. denied, 111 S.Ct. 516 (1990).
 
 
 7
 Title VII prohibits an employer from discriminating among employees on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e.[1] Thus, women affected by childbirth or pregnancy must be treated the same as other employees for all "employment related purposes." In order for summary judgment to be granted in this case, there must be a genuine issue of fact as to whether the Hospital treated pregnant employees worse than employees with medical restrictions who were not pregnant. Because we find that no such issue of fact exists, we AFFIRM the grant of defendant's motion for summary judgment.
 
 
 8
 The EEOC has failed to show that pregnancy was a determining factor in the Hospital's decision to place the two pregnant employees on involuntary leave. It is hospital policy that as long as a medical restriction exists which interferes with an employee's ability to do a job, that employee may not work. Only when the disability is a permanent one will job reclassification be considered. The EEOC provides no evidence which suggests that this policy is enforced only or disproportionately or discriminatorily against pregnant employees.
 
 
 9
 The EEOC argues that the Hospital's handling of other employees' disabilities exhibits the discrimination between pregnant and non-pregnant employees. First, the EEOC argues that Theresa McClellan, an EKG technician on the night shift, was not placed on involuntary leave when she reported a non-pregnancy related medical condition. McClellan submitted a note from her doctor which indicated that it would be better if McClellan worked days instead of midnights because of problems associated with her diabetes. The Hospital eventually transferred McClellan to the day shift. McClellan was not placed on temporary disability until the transfer could be arranged. This situation differs from the one at issue because diabetes is clearly a permanent disability. Thus, under the Hospital's policy, job reclassification or other adjustments are permissible. She was not required to take a temporary leave until the transfer because McClellan was able to perform fully the necessary functions of her job during the interim period. Nurses who are not allowed to enter isolation units are not performing the full scope of their duties.
 
 
 10
 Second, the EEOC argues that the Hospital has treated other pregnant employees better that Janowicz and Pierog-Manual. Specifically, these employees, who chose not to submit written doctors' notes outlining medical restrictions, were allowed to continue working throughout their pregnancies. Hospital employees may choose to work out some difficulties informally that would not be possible if they are handled directly by the Hospital administration. When the Hospital receives written notice of a disability, it faces a greater level of legal responsibility which may require it to actions which are unnecessary when the problem is handled on an informal basis between the employer and supervisor. Clearly, the fact that other employees choose to cover for nurses who cannot perform certain tasks does not show sex discrimination on the part of the Hospital. In addition, the EEOC's argument only shows that some pregnant workers may be treated better than other pregnant workers. Showing that different pregnant workers are treated differently does not supply the prima facie case that the EEOC must develop in order to prevent summary judgment from being granted. Neither does the evidence suggest that the reasons articulated by the Hospital for its policy are a pretext for sexual discrimination.
 
 
 11
 Because we agree that the EEOC is unable to make out a prima facie case of sex discrimination, we AFFIRM the decision of the District Court to grant the defendant's motion for summary judgment.
 
 
 12
 III.**
 
 
 13
 The Supreme Court has held that attorney's fees may be awarded to the prevailing defendant in a Title VII suit "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). An appellate court may overturn a trial court's award of attorney's fees only if it finds that the lower court clearly abused its discretion in awarding the fees. Jones v. Continental Corp., 789 F.2d 1225 (6th Cir.1986).
 
 
 14
 Awards of attorney's fees against the losing plaintiff in a civil rights action "is an extreme sanction, and must be limited to truly egregious cases of misconduct." Jones, 789 F.2d at 1232. The court must look at whether the allegation of discrimination was completely unjustified and whether the position presented by the plaintiff is plausible. Id. at 1233. The EEOC's position cannot be viewed as implausible or unjustified. The EEOC could have reasonably believed that McClellan's situation prior to her transfer to daytime work was analogous to the plaintiff nurses situation. It was not unreasonable to seek to have this issue decided by the court.
 
 
 15
 Accordingly, the judgment of the District Court is AFFIRMED. The majority of the panel finds no error in awarding attorney fees. The order awarding attorney fees is therefore also AFFIRMED.
 
 
 16
 The only issue upon which any members of the panel disagree is the award of partial attorney fees to the defendant. It is the position of two members hereof that the award should be affirmed.***
 
 Section 703(k) of Title VII provides:
 
 17
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.
 
 
 18
 42 U.S.C. § 2000e-5(k) (1988) (emphasis added). The statute expressly commits the decision whether to award attorney's fees in Title VII actions to the discretion of the trial judge. See Wrenn v. Gould, 808 F.2d 493, 504 (6th Cir.1987).
 
 
 19
 The Supreme Court instructs trial courts to award attorney's fees to a prevailing defendant in a Title VII action only "upon a finding that the plaintiffs action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). Our task in reviewing the trial court's decision to award attorney's fees in this case is to determine whether it has erred in so doing. If we are not firmly convinced that the trial court has made a mistake, then it has not abused its discretion. See In re Bendectin (Hoffman v. Merrell Dow Pharmaceuticals, Inc.), 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 20
 In awarding attorney's fees to Macomb Hospital, the trial court stated:
 
 
 21
 There was no discrimination in this case, clearly, from start to finish, and the E.E.O.C.'s position is totally unjustified.
 
 
 22
 ....
 
 
 23
 ... [T]he July 23rd, 1990 letter warning the E.E.O.C. of the consequences of this course of action.... clearly laid out that the Commission was opening itself up to a claim of attorney fees. Its position was altogether unreasonable, frivolous, and without foundation, therefore the fees as claimed will be awarded, not the entire 30,000, but all fees incurred after the letter of July 23rd, 1990.
 
 
 24
 J.A. at 57-58. The EEOC's claim was not so unreasonable from its inception as to warrant an attorney's fees award. Prior to July 23, 1990, the agency did not have full knowledge of the Hospital's past record in dealing with cases of employees' temporary disabilities. By the time the Hospital sent the above-referenced letter, however, the EEOC's discovery was complete and it still had not uncovered any disparate treatment of similarly situated employees. The situation of Theresa McClellan was clearly different from those of Janowicz and Pierog-Manuel in that her disability was permanent. See supra p. 4.
 
 
 25
 A reviewing court has only a "cold" record before it. It is sometimes difficult to determine the propriety of an attorney's conduct from reading briefs and watching that attorney argue for fifteen minutes. It is the trial judge who not only has that opportunity, but likewise a day to day contact with the parties involved. In this instance, there is evidence of persistence beyond that which was appropriate.
 
 
 26
 It should be noted that the trial judge assessed only those attorney fees incurred after July 23, 1990 when the defendant placed plaintiff on notice that its claims were frivolous (R82: TR. pp. 11-12).
 
 
 27
 This determination was not an abuse of discretion. By not awarding the fees from the litigation's inception through July 23, 1990, the court refrained from discouraging possible victims of discrimination from bringing actions and investigating their claims. The award of the post-July 23 attorney's fees simply serves as a reminder that claims which are found, upon investigation, to be without foundation or merit should not be pursued further.
 
 
 28
 The United States and its agencies with superior time, money and manpower should not be able to subject defendants, even corporate defendants, to unnecessary and wasteful depletion of resources in order to pursue an untenable position.
 
 
 29
 The United States also, it should be pointed out, has an obligation to its citizens not to subject them to unnecessary litigation. The trial judge in this case is an experienced and capable one and if that judge, after a first-hand view of the case and the conduct of the attorneys, determines that the imposition of sanctions by way of attorney fees is appropriate, that decision should be given great deference.
 
 
 30
 The award of attorney fees by the district court is affirmed.
 
 
 
 *
 The Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The Pregnancy Discrimination Act of 1978, Pub.L. No. 95-555, § 1, 92 Stat. 2076 provides:
 The terms [in Title VII] "because of sex" or "on the basis of sex" include ... because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.
 
 
 **
 Part III is the opinion only of Circuit Judge Cornelia G. Kennedy. The other members of the panel filed a separate opinion
 
 
 ***
 This opinion was labeled "Dissent." However, it is the opinion of two members of the panel. District Judge Carl B. Rubin is the author. Circuit Judge Nathaniel R. Jones joined in the opinion