*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

|   |   |
|---|---|
| JEFFREY ALAN SALKIL, *Plaintiff,* <br><br> KIMBERLY M. SKAGGS; EQUAL JUSTICE FOUNDATION, *Appellants,* <br><br> *v.* <br><br> MOUNT STERLING TOWNSHIP POLICE DEPARTMENT, et al., *Defendants,* <br><br> VILLAGE OF MT. STERLING, *Defendant-Appellee.* | No. 05-3051 |

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00106—James L. Graham, District Judge.

Argued: January 31, 2006

Decided and Filed: August 15, 2006

Before: RYAN, CLAY, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Richard S. Walinski, COOPER & WALINSKI, Toledo, Ohio, for Appellants. Tabitha D. Justice, SUBASHI, WILDERMUTH & BALLATO, Dayton, Ohio, for Appellee. **ON BRIEF:** Richard S. Walinski, COOPER & WALINSKI, Toledo, Ohio, Kimberly M. Skaggs, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, for Appellants. Tabitha D. Justice, Lynnette P. Ballato, SUBASHI, WILDERMUTH & BALLATO, Dayton, Ohio, for Appellee.

CLAY, J., delivered the opinion of the court, in which GILMAN, J., joined. RYAN, J. (pp. 11-14), delivered a separate dissenting opinion.

1

—————————

**OPINION**

—————————

CLAY, Circuit Judge.  Kimberly Skaggs ("Skaggs") and Equal Justice Foundation ("EJF"), appeal an order of the United States District Court for the Southern District of Ohio, sanctioning them pursuant to Rule 11 of the Federal Rules of Civil Procedure and awarding Defendant, Village of Mt. Sterling ("the Village"), attorneys' fees under 28 U.S.C. § 1927.  The district court imposed sanctions and attorneys' fees on Skaggs and the EJF for Skaggs' conduct as an attorney for Jeffrey Alan Salkil in his civil rights action under 42 U.S.C. § 1983.  Because we find the district court rendered its decision under a clear misapprehension of Skaggs' conduct, as well as with the benefit of hindsight, we hold that the district court abused its discretion and **REVERSE** the order of the district court.

I.

**BACKGROUND**

**A.      Salkil's Arrest and Incarceration**

The events in this case arise out of Plaintiff Jeffrey Alan Salkil's ("Salkil") arrest and subsequent 53 day incarceration in Mt. Sterling, Ohio.  On October 1, 2000, Patrolman M. Stone of the Mt. Sterling Township Police Department arrested Salkil for operating a motor vehicle under the influence ("OMVI"), improper backing, leaving the scene of an accident, and a seat belt violation.  Stone placed Salkil in the Madison County jail, where Salkil allegedly refused to submit to a urinalysis test.  Because of Salkil's alleged refusal to submit to testing, his driver's license was suspended pursuant to Ohio Revised Code § 4511.191.

Salkil was arraigned the next day.  At the arraignment, Salkil completed an affidavit of indigency and requested that the court appoint him counsel.  The court denied Salkil's request for appointment of counsel, however, finding that Salkil was not indigent because of his employment with a sports equipment company.  Salkil then informed the court that because of the arrest and incarceration, he no longer had a job.  The judge thus instructed Salkil to file a new affidavit of indigency, stating that he had no income.

After the arraignment, Salkil was returned to the Madison County jail.  Although the court had set bail at $1350, Salkil was unable to post the requisite bail bond.  The municipal court would not accept Salkil's debit card, and no local bail bondsman would assist Salkil because he was not an Ohio resident.  Consequently, Salkil was forced to remain in jail.

Salkil remained in jail without access to counsel for a full month and a half.  According to Salkil, he was unable to timely file a new affidavit of indigency as instructed by the court because the jail guards refused to give him the proper forms, despite his repeated requests.  On November 1, 2000, Salkil completed and filed an affidavit of indigency and the court appointed Shirley Hangsen as his counsel.  Hangsen met with Salkil for the first time midway through November.  Finally, on November 22, 2000, after Salkil had spent 53 days in prison, he was released on his own recognizance.

Thereafter, Hangsen negotiated a plea agreement with the Village of Mt. Sterling's prosecutor, Mark Pistick.  Pistick agreed to drop all charges against Salkil in exchange for Salkil's agreement to release the Village from all liability under 42 U.S.C. § 1983.  According to Salkil, Hangsen informed him that the Village would not agree to any plea unless Salkil released the

Village from liability and that the release was standard practice. Against Hangsen's advice, Salkil refused to agree to the release.

Despite Salkil's refusal to agree to the release, Hangsen sent a joint order of dismissal signed by Pistick to the court. On January 22, 2001, the municipal court entered an order dismissing all charges against Salkil. The order contained a finding, agreed upon during the plea negotiations, that no probable cause existed for the OMVI. That finding was necessary to terminate the suspension on Salkil's license. Ohio Rev. Code § 4511.191(H)(1)(a). For reasons unclear from the record, however, the suspension on Salkil's license was never terminated.

Sometime after the order was entered, Pistick learned that Salkil had not agreed to the release. Nonetheless, Pistick did not reinstate the charges. Salkil claims that he did not learn of the dismissal until December of 2001, and that prior to that time, he assumed that plea negotiations were ongoing because he would not agree to the release. Consequently, Salkil remained without a valid driver's license.

## B.     Salkil's § 1983 Action

On January 31, 2002, Salkil filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in federal district court alleging false arrest, abuse of process, false imprisonment, malicious prosecution, legal malpractice, and various constitutional claims. Salkil named the following parties as defendants: (1) Mt. Sterling Township Police Department and patrolman Stone; (2) Madison County Municipal Court and municipal court judge David R. Pickens; (3) Madison County Sheriff's Department and officers Lilly, Creamer, Liska, and Cochran; (4) Madison County Jail and corrections officer Lawrence; (5) Mt. Sterling Village Solicitor's Officer and prosecutor Mark J. Pistick; (6) the law firm of Tanner, Matthewson and Hangsen, and its partner Shirley Hangsen; and (7) the State of Ohio. Discovery and numerous motions to dismiss ensued.

On March 4, 2003, approximately one year after the commencement of the action, Skaggs, Executive Director of the EJF, entered her first appearance on behalf of Salkil. That same day, Skaggs moved to amend Salkil's complaint and eliminate Salkil's claims against all but two Defendants: the Village of Mt. Sterling and the Mt. Sterling Township Police Department. The district court initially denied the motion to amend the complaint, but shortly thereafter, *sua sponte* requested that Skaggs file a statement setting forth Salkil's remaining claims and their respective legal justification. In accordance with the district court's request, Skaggs filed a statement of Salkil's remaining claims. The statement included a claim against the Village entitled "release of liability," based on the Village's attempt to enter into a release-dismissal agreement with Salkil. The statement also set forth the factual background that formed the basis for this claim, including Salkil's refusal to sign the release-dismissal agreement, and the Village's decision not to reinstate the charges against Salkil despite his refusal to sign the agreement.

Over the Village's objections, the district court granted Salkil leave to file an amended complaint. The district court expressly held that the Village's objections to the claims were more appropriately addressed in a motion to dismiss rather than in a denial of leave to amend. Pursuant to the district court's order, Skaggs filed an amended complaint on behalf of Salkil. The amended complaint contained four claims: (1) a Sixth Amendment claim premised on Salkil's inability to access counsel while incarcerated; (2) a Fourth Amendment claim premised on Salikil's 53 day incarceration; (3) a Fourteenth Amendment claim premised on Defendants' failure to accept Salkil's bond payment; and (4) a First Amendment claim, under the Petitions Clause, premised on the Village's attempt to force Salkil to sign a release-dismissal agreement waiving his right to sue. The First Amendment claim was Salkil's sole claim against the Village.

## C.        The Village's Motion for Judgment on the Pleadings

On July 1, 2003, the Village simultaneously served Skaggs with a motion for judgment on the pleadings and a letter requesting that Salkil withdraw his First Amendment claim against the Village pursuant to Rule 11. The letter stated that the First Amendment claim was frivolous for the reasons stated in the motion for judgment on the pleadings and warned that the Village would seek sanctions if the First Amendment claim was not withdrawn. The motion for judgment on the pleadings included a two page memorandum, which argued that Salkil's "[First Amendment] claim fail[ed] to present a cognizable action" based on existing case law. The Village reasoned as follows:

> The *Coughlen* case, a copy of which is attached to this motion for the Court's convenience, holds that plea agreements releasing the village, police officers, and prosecutors from misconduct do not support meritorious civil rights claims unless it can be demonstrated that the criminal charges are filed frivolously in an attempt to protect those committing misconduct from having to face potential civil liability. In this case, given that Plaintiff has already admitted the underlying charges were viable, but simply disagrees with the idea of a criminal plea agreement including a waiver of civil liability, [Plaintiff] does not present a viable civil rights claim. In fact, the United States Supreme Court in *Town of Newton v. Rumery*, 480 U.S. 386 (1987) declared such plea bargain releases are not against public policy and do not impose coercive situations upon criminal defendants. *Id.* at 392-94. For these reasons, Plaintiff's Amended Complaint, as it brings a claim against the Village must be dismissed with prejudice.

(J.A. at 253.) Nowhere in the motion for judgment on the pleadings or the memorandum in support did the Village argue that Salkil did not have standing to bring the First Amendment claim.

Skaggs responded on behalf of Salkil accordingly, filing a memorandum in opposition to the Village's motion on July 25, 2003. In particular, Skaggs responded to the sole claim put forth in the Village's memorandum – that Salkil's complaint failed to present a cognizable First Amendment claim because the Supreme Court's decision in *Rumery* rendered release-dismissal agreements constitutional where the underlying charges are supported by evidence. Relying on this Court's decision in *Coughlen,* Skaggs argued that release-dismissal agreements are invalid unless 1) agreement is voluntary, 2) there is no prosecutorial misconduct, and 3) the agreement does not adversely affect the relevant public interests. According to Skaggs, the agreement in this case was not voluntary because Salkil refused to agree to it, and there was evidence of prosecutorial misconduct in that Salkil spent 53 days in jail for an OMVI. She further argued that determining the constitutionality of release-dismissal agreements required a case by case assessment, thereby implying that a policy or practice requiring release-dismissal agreements in all cases could not pass constitutional muster.

The Village replied on August 7, 2003, reiterating its position that the First Amendment right to petition the government is not implicated by release-dismissal agreements. Ignoring the language of the First Amendment guaranteeing the right to petition the government, the Village argued that "[t]he First Amendment guarantees free speech and associational rights. No where [sic] in Plaintiff's Amended Complaint or memorandum in opposition does Plaintiff ever state how or why the First Amendment provides some constitutionally protected right that deals with plea bargains offered to criminal defendants." (J.A. at 278.)

The court granted the Village's motion for judgment on the pleadings on December 2, 2003, construing the motion as one for failure to state a claim. The district court held that Salkil failed to state a First Amendment claim because the Village never actually deprived Salkil of the right to petition the government. According to the district court, an unsuccessful attempt to deprive a person

of a constitutional right is not actionable under § 1983. The district court reasoned that the attempt was clearly unsuccessful because Salkil was able to maintain the instant § 1983 action and the Village did not raise the release as a defense. On January 9, 2004, the district court dismissed Salkil's remaining claims. Two weeks later, on January 23, 2004, Skaggs moved to withdraw from Salkil's representation.

## D.     The Village's Motion for Sanctions and Attorneys' Fees

After the district court dismissed Salkil's claims and Skaggs withdrew from his representation, the Village moved for attorneys' fees under Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988(b), and sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 against both Salkil and Skaggs. The Village based its request for sanctions and attorneys' fees on its position that Salkil's First Amendment claim was frivolous. Skaggs responded to the motion for attorneys' fees and sanctions reiterating the position she had maintained throughout the litigation that a policy or practice of demanding release-dismissal agreements may violate the First Amendment right to petition the government. She further explained, albeit for the first time, that Salkil was harmed by the Village's policy because it delayed his ability to regain his license. Skaggs also stated that she disagreed with the district court's ruling on the motion for judgment on the pleadings, but assuming that the district court ruled correctly, it was still a close question of law.

On April 28, 2004, the district court granted the Village's motion for sanctions against Skaggs pursuant to Rule 11. The court reasoned that despite the July 1, 2003 letter requesting that Skaggs withdraw Salkil's First Amendment claim or face Rule 11 sanctions, Skaggs continued to assert the untenable legal theory that the Village violated Salkil's First Amendment rights.[1]  The district court seemingly believed that existing case law did not support the position of Skaggs and the EJF because existing case law only addresses the enforceability of release-dismissal agreements and not "mere offers" for such agreements. In its order dated April 28, 2004, the district explained, stating:

> As previously stated, while a party seeking to enforce a plea agreement has the burden of proving [enforceability], this analysis does not apply to this case because no one attempted or threatened to enforce the agreement. The release agreements are not per se invalid as contrary to public policy . . . . Ms. Skaggs never argued for an extension , modification, or reversal of the existing law, or the establishment of new law. . . . Because this court finds that there was no reasonable basis in law and fact for the position taken by Ms. Skaggs, this court finds that Ms. Skaggs violated Rule 11(b)(2) and grants the Village's motion for sanctions.

(J.A. at 43.) The order also directed the parties to file briefs addressing the monetary amount that the court should sanction Skaggs and the EJF.

Thereafter, Skaggs moved for reconsideration of the imposition of Rule 11 sanctions on the ground that the district court improperly applied the pre-1993 version of Rule 11. Skaggs argued, among other things, that the post-1993 version of Rule 11 did not allow the Court to impose monetary sanctions. The Village's motion in opposition was, for the most part, non-responsive.

On July 8, 2004, the district court held a hearing on the issue of sanctions. The Court questioned Skaggs and her attorney, Kathleen Trafford, about Skaggs' reasons for believing that a viable First Amendment claim existed. Significantly, the district court raised the issue of standing

---

[1]This opinion does not indorse the use of a letter in place of the requisite safe-harbor "motion" required by Rule 11 or the Village's incorporation of its motion for judgment on the pleadings into its safe-harbor letter. However, because the parties have not briefed these issues, we decline to reach them.

for the first time. Skaggs and Trafford explained that at the time Skaggs filed the amended complaint Skaggs believed that Salkil had standing because Skaggs understood the continuing suspension of Salkil's license to be a direct consequence of his refusal to sign the release-dismissal.

On August 23, 2003, the district court issued an opinion and order affirming its decision to impose sanctions on Skaggs and the EJF under Rule 11. The district court reiterated its position that Salkil's First Amendment claim was not supported by existing law or a non-frivolous argument for its extension. The district court again reasoned that existing case law only addresses the legality of release-dismissal agreements actually executed, and in this case, no release-dismissal agreement was ever executed. Thereafter, the district court went on to address an additional issue that, according to the district court, Salkil raised for the first time in her memorandum in opposition to sanctions: the pattern or practice nature of Salkil's claim. Without addressing the viability of a pattern or practice claim under the Petitions Clause, the district court reasoned that Salkil could not make a pattern or practice claim because Salkil was not a victim of the Village's alleged policy or practice of demanding release-dismissal agreements. In other words, the district court seemingly determined that Salkil lacked standing to raise a policy or practice claim because the Village did not attempt to enforce the release-dismissal agreement against him or reinstate the charges. The district court rejected Skaggs' theory that Salkil was harmed by the continuing suspension on his license by explaining that the continuing suspension did not appear to be a consequence of Salkil's refusal to sign the release-dismissal agreement but rather Hangsen's failure to inform Salkil that the Village had dismissed the charges against him. In conducting its standing analysis, the district court failed to consider whether Skaggs' belief that Salkil possessed standing was reasonable at the time Skaggs was advancing the First Amendment claim on behalf of Salkil. In addition, the new order imposed attorneys' fees on Skaggs under 28 U.S.C. §1927. In contrast to the Rule 11 sanctions, the court justified attorneys' fees under § 1927 solely on Salkil's lack of standing. Skaggs and the EJF now appeal the imposition of sanctions under Rule 11 and attorneys' fees under 28 U.S.C. § 1927.

## II.

## DISCUSSION

There are two issues before this Court today: whether the district court abused its discretion in imposing sanctions on Skaggs and the EJF under Rule 11 and whether the district court abused its discretion in imposing attorneys' fees on Skaggs and the EJF under 28 U.S.C. § 1927. For the reasons set forth below, we find that the district abused its discretion in both instances.

### A.     Standard of Review

It is well-established that this Court reviews a district court's decision to impose sanctions under Rule 11 or attorneys' fees under § 1927 for abuse of discretion. *Ridder v. City of Springfield*, 109 F.3d 288, 293, 298 (6th Cir. 1997). A district court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, U.S. 496 U.S. 384, 405 (1990).

### B.     Rule 11

The district court based its sanctions decision on two alternative grounds. First, the district court held that Skaggs acted unreasonably because Salkil's First Amendment claim was unwarranted in light of existing case law. Second, the district court held that Skaggs acted unreasonably because Salkil lacked standing to raise a claim based on the Village's offer of a release-dismissal agreement. Both grounds were impermissible bases for the district court's decision and constitute an abuse of discretion because: (1) the district court's conclusion that Salkil's First Amendment claim was unwarranted in light of existing law was based on a clearly erroneous characterization of Salkil's

First Amendment claim; and (2) the district court's conclusion that Salkil lacked standing was made with the benefit of hindsight.

### 1.        Rule 11 requires attorneys to act "reasonably."

Rule 11 prohibits attorneys from filing any "pleading, written motion, or other paper," unless "to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed R. Civ. P. 11(b). Arguments for the extension of existing law need not be identified as such. *See* Fed. R. Civ. P. 11 advisory committee's note ("Although arguments for change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.") In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was "reasonable under the circumstances." *Ridder*, 109 F.3d at 293.

### 2.        The district court's conclusion that Skaggs unreasonably advanced a frivolous First Amendment claim on behalf of Salkil was based on a clearly erroneous characterization of Salkil's claim.

The district court very clearly misapprehended Salkil's First Amendment claim. The district court believed that Salkil was alleging the Village's "mere offer" of a release-dismissal agreement violated the First Amendment. In fact, Skaggs was advancing a dramatically different legal argument on behalf of Salkil. Skaggs was arguing that the Village had a policy or practice of requiring defendants to waive their legal claims where the Village had violated the defendants' constitutional rights, and that this policy violated the First Amendment's Petitions Clause. Skaggs' position is evidenced in the complaint itself, in addition to her statements at the sanctions hearing. The complaint reads:

> Violation of 42 U.S.C. § 1983 Based on Freedom to Seek Redress From the Government Guaranteed by the First Amendment
>
> 72.    Mr. Salkil was offered a plea agreement.
> 73.    In that agreement, Salkil would have had to release the Village from liability for its role in the violation of Mr. Salkil's constitutional right.
> 74.    From belief, this type of agreement is common when the Village violates a person's constitutional rights.
> 75.    This policy or custom of forcing defendants to release the Village from liability in order to receive a plea agreement is arbitrary and unreasonable.

(J.A. at 25-26.) Additionally, at the sanctions hearing, Salkil further explained that the Village did not simply "offer" Salkil a release-dismissal agreement, but attempted to force it upon him. Despite the clear language of Salkil's complaint, and numerous other memoranda filed in this case, the district court clearly failed to grasp Salkil's claim. In its final sanctions opinion, the district court noted:

> At the hearing on this motion, Ms. Skaggs articulated a new justification for the claims she asserted against the Village. She said that she believed the Village was pursuing an unconstitutional policy of demanding a release in every plea agreement . . . . This is the first time it has been suggested that this litigation was anything other than a personal claim for damages by Mr. Salkil.

(J.A. at 52-53.)  The above quoted language clearly demonstrates the district court's failure to accurately characterize Salkil's First Amendment claim.

The difference between the district court's misapprehension of Salkil's First Amendment claim and Salkil's actual First Amendment claim was not insignificant; it affected the district court's assessment of the reasonableness of Skaggs' conduct.  The district court perhaps correctly concluded that existing case law could not be extended to render mere offers of release-dismissal agreements unconstitutional.  This, however, was not Salkil's claim.  Salkil alleged that the Village maintained a policy or practice of requiring release-dismissal agreements in all cases where the Village violated a defendant's constitutional rights.  It is not unreasonable to suggest that a municipality's policy or practice of demanding release-dismissal agreements for the sole purpose of avoiding constitutional responsibilities violates the First Amendment.  Although both this Court and the Supreme Court have approved the use of release-dismissal agreements, *see Town Newton v. Rumery*, 480 U.S. 386 (1987) and *Coughlen v. Coots,* 5 F.3d 970, 974 (6th Cir. 1993), both courts have also stated that the validity of such agreements must be assessed on a case by case basis.  A policy or practice of demanding that such agreements be a part of every plea deal, necessarily precludes a case by case treatment of such agreements.  Furthermore, this Court has warned against enforcing release-dismissal agreements where there is evidence of government misconduct.  *See Coughlen*, 5 F.3d at 974 ("[S]hould a court conclude that a prosecutor secured a release-dismissal bargain in the face of substantial evidence of police misconduct, the court could take this as evidence of prosecutorial misconduct. . . .")  Salkil's 53 day tenure in prison while awaiting trial on a drunk-driving charge could reasonably give rise to an inference of police misconduct and thereby prosecutorial misconduct.

This is not to say that a municipality's policy or practice of demanding release-dismissal agreements violates the First Amendment.  Little case law exists on this issue, and the case law that does exist is not directly on point.  *Rumery* and *Coughlen*  address the enforceability of individual release-dismissal agreements, not the validity of a policy requiring such agreements.  *See generally Rumery*, 480 U.S. at 386; *Coughlen,* 5 F.3d at 974.   Additionally, *Rumery* and *Coughlen* are not First Amendment cases, but cases based on "federal policy."  *See generally Rumery*, 480 U.S. at 386; *Coughlen,* 5 F.3d at 974.

Instead, we note only that it is unlikely that the district court would have concluded that Salkil's First Amendment claim was not warranted by a non-frivolous argument for the extension of existing law if it had properly apprehended Salkil's claim.  *Rumery* and *Coughlen*, while not directly on point, indicate that release-dismissal agreements are subject to court scrutiny.  Moreover, lest we not forget,  the language of the First Amendment itself expressly precludes depriving persons of the right to petition the government.  U.S. Const. amend. I ("Congress shall make no law . . . abridging . . .the right of the people . . . to petition the Government for a redress of grievances.").  A municipality's attempt to avoid liability for a constitutional wrong through the blanket use of release-dismissal agreements arguably conflicts with this language.  *See Cal. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972); *Bhd. of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7 (1964) ("The State  . . . [cannot use] direct means to bar [plaintiffs] from resorting to the courts to vindicate their legal rights. The right to petition the courts cannot be so handicapped.")  Consequently, Skaggs' interpretation of the First Amendment, while not necessarily correct, was not unreasonable.

> **3.        The district court's conclusion that Salkil lacked standing was made with the benefit of hindsight.**

Perhaps realizing its error, the district court gave alternate grounds for imposing sanctions in its final sanctions opinion.  Concluding that Skaggs had failed to raise the policy or practice claim, the district court nonetheless held that Salkil lacked standing to bring a policy or practice

claim. The district court reasoned that Salkil lacked standing because the Village's alleged policy or practice had not harmed Salkil. While the district court's determination that Salkil lacked standing was probably correct, it was not a proper basis for Rule 11 sanctions. A district court may only impose Rule 11 sanctions for conduct unreasonable "under the circumstances." The record in this case, clearly indicates that "under the circumstances," Skaggs' failure to recognize Salkil's lack of standing was reasonable. In concluding otherwise, the district court improperly evaluated Skaggs' conduct with the wisdom of hindsight, thereby abusing its discretion.

As this Court has recognized on numerous occasions, assessing whether conduct is "reasonable under the circumstances" requires the district court to analyze counsel's conduct as it appeared at the time counsel acted.

> Although a district court is given wide discretion in deciding whether counsel have acted reasonably under the circumstances, "[t]he court is expected to avoid using the wisdom of hindsight and should test [counsel]'s conduct by inquiring what was reasonable to believe at the time [counsel acted]."

*INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987) (quoting Fed. R. Civ. P. 11 advisory committee's note); *see, e.g., In re Big Rapids Mall Assoc.*, 98 F.3d 926, 930 (1996). To avoid using hindsight in assessing counsel's conduct, it is useful to look at whether other parties to the litigation recognized counsel's error at the time it was made. A mistake can hardly be characterized as unreasonable, or below some objective standard, when the mistake is made by all parties to the litigation.

In this case, the district court failed to address Skaggs' conduct from the perspective of a reasonable attorney at the time Skaggs acted, thereby abusing its discretion. Although the district court's legal analysis of standing was likely correct, the district court conducted the analysis without inquiring into the reasonableness of Skaggs' belief that Salkil possessed standing at the time she advanced his claim. Rule 11 requires district courts to assess an attorney's conduct from the standpoint of a reasonable attorney at the time counsel committed the sanctionable conduct. Thus, the district court abused its discretion in sanctioning Skaggs for Salkil's lack of standing.

The record in this case indicates that, at the time she acted, Skaggs' belief that Salkil possessed standing was not unreasonable, particularly because neither the district court nor the Village recognized that standing was an issue. Before filing the amended complaint, Skaggs informed both the Village and the district court of the factual basis that ultimately led the district court to conclude that Salkil lacked standing. Skaggs filed a statement of remaining claims that expressly recounted Salkil's steadfast refusal to enter into the release-dismissal agreement and the Village's decision not to reinstate the dismissed charges. Nonetheless, not only did the district first raise standing during the sanctions hearing, the district court permitted Skaggs to file the amended complaint after reading the statement of remaining claims. *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998) (holding that federal courts have an independent obligation to assess jurisdiction). Similarly, the Village failed to challenge the amended complaint based on standing, despite having a financial incentive to do so. In fact, the Village maintained throughout oral arguments that the proper basis for sanctions and attorneys' fees was not standing but Skaggs' position on the First Amendment. If both the district court and the Village failed to recognize the standing issue, this Court can only conclude that at the time Salkil filed the amended complaint, the standing issue was not an obvious one. Although we emphasize that Skaggs had a duty to assess her client's constitutional standing independent from that of the district court or the Village, we cannot find that Skaggs' failure to recognize the standing issue was unreasonable.

The dissent's analysis suffers from the same flaw in reasoning as that of the district court. The dissent analyzes facts which came forth at various points during the duration of the lawsuit as

if the facts were all available to Skaggs when she filed the amended complaint. Thus, instead of focusing on whether Salkil's conduct was reasonable "under the circumstances," the dissent focuses on whether Salkil ultimately had standing. This is simply not the proper inquiry.

Moreover, the dissent's attempt to bolster its conclusion by citing two instances in which the Village passingly referenced the term "harm" is misleading. Both references, practically incomprehensible, are no more than two to three sentences buried in more extensive discussions of First Amendment law, and in context simply appear as an extension of the Village's argument that Salkil's claim was not grounded in existing First Amendment law inasmuch as existing case law only deals with situations in which release-dismissal agreements were actually enforced. This point in particular was made clear at oral arguments when the Village denied that standing was a basis for sanctions. Only in hindsight do these opaque references seem to carry any standing-related meaning.

To the extent these references can be interpreted as addressing the injury-in-fact component of Article III standing, they are also unresponsive to Salkil's theory of harm. The references state that Salkil suffered no harm because the Village never attempted to enforce any release-dismissal agreement. However, Salkil argued that the Village attempted to force him to sign the release-dismissal agreement by essentially harassing him; he never contended that the Village attempted to enforce the release-dismissal agreement against him. In other words, his theory of harm was never that the Village harmed him by enforcing the agreement, but rather that they delayed the removal of the suspension on his license. Accordingly, we are not persuaded that the Village ever recognized the standing problem, let alone put Salkil on notice of the standing problem.

## C.     28 U.S.C. § 1927

Similarly, we find that the district court abused its discretion in assessing attorneys' fees against Skaggs and the EJF. "Section 1927 provides that any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Ridder*, 109 F.3d at 298 (quoting 28 U.S.C. § 1927). Section 1927 imposes an objective standard of conduct on attorneys, and courts need not make a finding of subjective bad faith before assessing monetary sanctions under § 1927. *Id.* (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)). Instead, a district court may impose sanctions under § 1927 when it determines that "'an attorney reasonably should know that a claim pursued is frivolous.'" *Id.* (quoting *Jones v. Continental Corp.*, 789 F.2d at 1230). Simple inadvertence or negligence, however, will not support sanctions under §1927. *Id.* (quoting *In re Reuben*, 825 F.2d 977, 984 (6th Cir. 1987)). "'There must be some conduct on the part of the subject attorney that trial judges, applying collective wisdom of their experience on the bench could agree falls short of the obligations owed by a member of the bar to the court.'" *Id.* (quoting *Reuben*, 825 F.2d d at 984). Moreover, "'an award of attorneys' fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Id.* at 299 (quoting *Jones*, 789 F.2d at 1232) (applying in the context of a civil rights attorney).

In this case, the district court imposed attorneys' fees under § 1927 for the same reason it imposed Rule 11 sanctions: Salkil lacked standing to bring any First Amendment claim. As explained in previous section, Skagg's failure to recognize that Salkil lacked standing was not unreasonable. Accordingly, it most certainly did not constitute egregious misconduct.

## III.

## CONCLUSION

For the reasons set forth above, we **REVERSE** the order of the district court.

---

**DISSENT**

---

RYAN, Circuit Judge, dissenting. Neither the appellants' arguments nor the majority opinion have convinced me that the district court abused its discretion in reprimanding Kimberly M. Skaggs and the Equal Justice Foundation pursuant to Fed. R. Civ. P. 11, and sanctioning them pursuant to 28 U.S.C. § 1927.

## I. RULE 11

The district court reprimanded Skaggs for unreasonably pursuing a claim on Jeffrey Salkil's behalf that was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," in violation of Rule 11(b)(2). The claim, as Skaggs presented it, was that Salkil was harmed because his refusal to agree to the liability waiver the Village of Mt. Sterling required meant that he was forced to stand trial in order to have his driver's license reinstated, whereas he would have been able to obtain the return of his license *immediately* had the Village not conditioned his plea agreement on the waiver. The court recognized that this argument lacked merit and a factual foundation because Salkil's license was not suspended because of the criminal charges brought by the Village; rather, it was suspended because he refused to submit to an alcohol test when ordered to do so by the arresting officer. In addition, the court noted, Salkil actually received a plea agreement that dismissed the charges and contained the language necessary to restore his driver's license immediately, without having to sign the proposed liability waiver.

At the July 8, 2004, hearing on her motion for reconsideration of the order imposing sanctions, Skaggs, perhaps recognizing a looming standing problem, offered a new justification for the claims she was asserting on Salkil's behalf. She stated that she was concerned not only about Salkil, but about the "big picture"—the Village's "unconstitutional policy of demanding a release in every plea agreement." The court explained:

> This is the first time it has been suggested that this litigation was anything other than a personal claim for damages by Mr. Salkil. Be that as it may, in order for his lawsuit to curb an unconstitutional municipal policy or practice, Mr. Salkil would have to show that he was a victim of the alleged policy or practice, which clearly he was not.

Skaggs argues that the district court abused its discretion in issuing the Rule 11 reprimand because Salkil's "claim that the Village's alleged demand for a waiver in every plea agreement [was unconstitutional,] was a logical extension of existing case law," and the court "hinged its decision to award sanctions on Mr. Salkil's [lack of] standing to bring the claim," without allowing Skaggs to brief the issue. Skaggs contends that, had the court "fully considered the issue of standing, it would have realized that the Village's alleged wrongful conduct resulted in the prolongation of the administrative suspension of Mr. Salkil's driving privileges in Ohio," thus giving Salkil the requisite standing.

Although Skaggs's shifting and somewhat abstruse theory of the Village's alleged liability to Salkil is not easy to pin down, it seems to me, after reviewing the entire record, that Skaggs has based Salkil's claim on the following reasoning: The Village allegedly had a policy of conditioning all plea agreement offers on a waiver of liability. Such a policy is unconstitutional because, in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), this court held that liability waivers contained in plea agreements are not *per se* enforceable, and their validity must be reviewed on a case-by-case basis.

Salkil was harmed by the policy, even though he received a plea agreement without signing a liability waiver, because the Village did not *offer* him that agreement. Rather, he received his plea agreement only as the result of his attorney's error. Salkil was harmed by the Village's alleged policy, despite the fact that he received a plea agreement that dismissed the charges against him and contained the language necessary to terminate the administrative suspension of his driver's license, because the suspension was not terminated, and, had his case proceeded to trial, the suspension may have been terminated more quickly.

The district court disagreed and found that in advancing that claim, and in certifying that the claim was warranted by existing law or a nonfrivolous argument for the extension of existing law, Skaggs acted unreasonably. In my judgment, the district judge could not reasonably have come to any other conclusion, but even if I am wrong about that, he certainly did not abuse his discretion. Skaggs's argument that *Coughlen* can be extended to render the Village's alleged policy unconstitutional is tenuous at best. But even if that argument were tenable, it is clear that Salkil's alleged injury is not fairly traceable to the Village's alleged policy. Finally, even with the benefit of briefing, Skaggs has come up with no more than a claim that Salkil suffered a speculative or conjectural, rather than an actual, injury. Her argument that Salkil was injured because his driver's license *may* have been restored more quickly had he not been offered the plea agreement, and instead, stood trial, is manifestly meritless.

The plea agreement Salkil's attorney filed contained the language necessary to terminate the administrative suspension of Salkil's driver's license. The only reason the suspension was not terminated is that Salkil did not complete and file the proper administrative form. The Village had no responsibility to ensure that Salkil followed the proper procedure for the reinstatement of his driving privileges. That responsibility lay with Salkil and his attorney. Any failure to restore Salkil's license upon the filing of the plea agreement was caused by Salkil's and his attorney's failure to communicate and ensure that the necessary steps were taken to terminate the suspension and restore the license.

Even if the failure to restore Salkil's license upon the filing of the plea agreement were not attributable to Salkil and his attorney, there is no basis for Skaggs's claim that the Village did anything to prolong the suspension of Salkil's license. Skaggs argues that Salkil waited a year for the administrative suspension to expire, and, had he never been offered the plea agreement, his case "would have proceeded in [a] direction that in all likelihood would have terminated the administrative suspension earlier than its one-year statutory termination." That, of course, is pure speculation, and moreover, it is based on an erroneous assumption.

Under Ohio law, the administrative suspension of Salkil's license for refusal to submit to an alcohol test would have terminated upon a judgment or plea of guilty on the OMVI charge, but it would have been replaced by a mandatory suspension of at least six months but not more than three years, with credit given for the period of the original suspension. *See* Ohio Rev. Code Ann. §§ 4511.191(E)(2), (K) (May 17, 2000); 4507.16(B)(1) (March 23, 2000). Thus, there is only a chance that Salkil's license would have been restored more quickly had he waited for trial.

## II. STANDING

To satisfy the constitutional requirements for standing, a claimant must have suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Salkil clearly did not have standing to bring his claim against the Village because he could allege only a "conjectural" injury that was not fairly traceable to the Village's alleged unconstitutional conduct.

I respectfully disagree with my colleagues that the fact that neither the district court nor the Village *addressed* Salkil's lack of standing during the merits stage of the proceedings indicates anything about whether Skaggs's belief that Salkil had standing to bring the claim was reasonable or unreasonable. The court's "delay," as my colleagues put it, in raising Salkil's clear lack of standing resulted from the fact that, prior to the sanctions stage of the proceedings, Skaggs had not clearly articulated the basis for Salkil's claim or alleged how Salkil was injured by the Village's alleged unconstitutional policy. Although Skaggs alleged from the beginning that the Village had an "arbitrary and unreasonable" policy of conditioning all plea agreements on liability waivers, she did not explain how the policy was unconstitutional under existing law or a reasonable extension of existing law until she responded to the Village's motion for sanctions. And she had not, until then, offered *any* explanation as to how Salkil was harmed by the policy. In fact, the explanation ultimately given was not fully developed until Skaggs appealed to this court.

Although neither the court nor the Village explicitly referenced the doctrine of "standing" during the merits stage of the proceedings, both addressed the substance of the constitutional requirements for standing in observing that Salkil failed to allege how the Village's conduct caused *him* harm. Before Salkil even filed the claim, the Village argued that he failed to allege in his statement of remaining claims that the district court required, how the offer of the plea agreement with a liability waiver harmed him when he refused to sign the waiver and the charges brought against him were still dismissed. Later, the Village argued, in its reply to Salkil's response to the motion for judgment on the pleadings, that Salkil "fail[ed] to present any evidence to allege that the revoked plea agreement caused [him] any harm." It also argued, and the district court agreed, that Salkil failed to show how the Village deprived him of his First Amendment right to petition the government when the Village offered him a plea agreement with a liability waiver but permitted him to receive the plea agreement without signing the waiver.

It is clear to me that the district court did not make a "clear error of judgment" in determining: 1) that Salkil's claim was a frivolous argument for the extension of existing law; and 2) that Skaggs acted unreasonably in filing and pursuing the claim because she had all the facts necessary to determine it was frivolous from the outset. The court did not abuse its discretion in reprimanding Skaggs and the Equal Justice Foundation pursuant to Rule 11.

### III.  28 U.S.C. § 1927

Although care must be taken in assessing attorney fees under 28 U.S.C. § 1927, to assure that attorneys are not deterred from their ethical obligation of zealous advocacy on behalf of their clients, *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987), an attorney's ethical obligation "does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious.'" *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

The district court assessed attorney fees under § 1927 on the ground that "Skaggs reasonably knew or should have known that the claim asserted against the Village was frivolous when she filed the amended complaint." As I have explained, I do not think the court abused its discretion in determining that Skaggs reasonably should have known that Salkil's claim against the Village was frivolous from the outset. Skaggs chose to include the claim in the amended complaint *after* the Village placed her on notice that the statement of the claims against the Village failed to identify a constitutional right violated or an injury suffered as a result of the Village's alleged conduct. She then continued to pursue the claim without clearly explaining the basis for it, even after receiving the Village's "safe harbor letter," and she never argued for an extension of existing law in support of Salkil's claim.

Skaggs argues that a district court may not assess attorney fees pursuant to 28 U.S.C. § 1927 "when the only finding is that the attorney advanced an unmeritorious or even frivolous claim."  I disagree.  Although this court has explained that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct," *Jones*, 789 F.2d at 1232, we have also explained, in the context of affirming an award of § 1927 attorney fees, that "a civil rights plaintiff does not have free rein to bring and pursue frivolous claims," *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997).

Contrary to Skaggs's assertions, our precedent is not that a court is precluded from awarding attorney fees for the pursuit of a frivolous civil rights claim unless that pursuit is accompanied by *other* unreasonable and vexatious conduct.  Rather, we have emphasized that the court should not conduct *post hoc* reasoning to conclude that a claim was frivolous merely because the plaintiff did not ultimately prevail.  *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).  A court should be especially cautious about conducting such *post hoc* reasoning in civil rights cases because "[i]t is a function of the intrinsic nature of civil rights actions that on occasion plaintiffs may not possess full evidentiary support at the onset."  *Ridder*, 109 F.3d at 299.

As I have explained, the district court did not engage in *post hoc* reasoning to conclude that Salkil's claim was frivolous.  Rather, it found that Salkil's claim was frivolous, even if he could prove every fact alleged in his complaint, because it was based on a frivolous argument for the extension of existing law.  The court also found that Skaggs had all the facts necessary to determine that Salkil's claim was frivolous prior to filing the amended complaint.  Skaggs not only pursued the claim, but she failed to clarify the basis for it, even after receiving the Village's "safe harbor letter."

I do not think the district court based its decision to assess attorney fees under § 1927 on an erroneous view of the law or a clearly erroneous assessment of the facts, nor am I firmly convinced the court made a clear error of judgment in concluding that Salkil's claim against the Village was frivolous from the outset, and that Skaggs multiplied unreasonably the proceedings in Salkil's case by including it in the amended complaint.  Therefore, I conclude that the district court did not abuse its discretion in awarding the Village attorney fees pursuant to 28 U.S.C. § 1927.

## IV.  CONCLUSION

As I see no abuse of discretion in the district court's decision to issue a reprimand pursuant to Fed. R. Civ. P. 11 and award attorney fees pursuant to 28 U.S.C. § 1927, I would affirm the district court's judgment.