OPINION
{¶ 1} This is an appeal from a summary judgment for all Defendants on Plaintiff's claims for relief alleging malicious prosecution, abuse of process, and violations of his civil rights.
 {¶ 2} On August 15, 2002, Plaintiff, Doug Wiedemann, made a deposit to his checking account with Sky Bank at its branch in Springboro, Ohio. The deposit was made at the drive-through window. The bank teller who accepted the deposit was Kevin Carsey.
 {¶ 3} After Wiedemann pulled forward from the drive-through window he examined his deposit slip and discovered that his account balance was less than the amount he had deposited. Wiedemann parked his vehicle and went inside the bank to inquire about the discrepancy.
 {¶ 4} Carsey explained to Wiedemann that the balance in his account reflected a charge for a check that was returned for insufficient funds several days before. Carsey further informed Wiedemann that another of his checks was returned for that same reason earlier that day.
 {¶ 5} Believing that the bank had promised to employ different procedures, Wiedemann challenged Carsey's explanation. Their exchange became heated, and Carsey threatened to call the police. Wiedemann turned and left the *Page 3 
bank, and as he did exclaimed "F — you!" in a loud tone of voice. Carsey claims that Wiedemann also said, "I ought to kill you."
 {¶ 6} Carsey telephoned the Springboro police to complain about Wiedemann after Wiedemann left the bank. Carsey was shaking and had difficulty speaking. Carsey went to the Springboro Prosecutor's office the following day to press his complaint about Wiedemann's conduct. However, when asked if he wished to have Wiedemann arrested, Carsey replied: "absolutely not."
 {¶ 7} The surveillance camera at the Sky Bank branch recorded a non-audio, still frame tape of the exchange between Wiedemann and Carsey. The following day the branch manager, Eric Smith, gave the tape to the Springboro Prosecutor's office.
 {¶ 8} Approximately one week later, on August 22, 2002, at about 9:00 p.m., Springboro Police arrested Wiedemann at his home, in the presence of his wife and four young children. The docket of the Springboro Mayor's Court shows that Wiedemann was charged with two violations of local ordinances.
 {¶ 9} Wiedemann was charged in case number 02TRB1182 with "Disorderly Conduct/Fail to Desist," a violation of Springboro ordinance #648.04. Wiedemann was charged in case number *Page 4 
02TRB1181 with "Menacing," a violation of Springboro ordinance #636.05. Both offenses are fourth degree misdemeanors. The docket reflects that the charges were filed on the complaint of Kevin Carsey and that Wiedemann entered pleas of not guilty and was released on the date he was arrested.
 {¶ 10} A trial date of August 28, 2002, one week after Wiedemann's arrest, was ordered in the Mayor's Court. However, the trial was continued from that date and was reset several times for various reasons. On the last date set for trial, May 28, 2003, Wiedemann moved for a discharge pursuant to R.C. 2945.73(B) for a violation of his statutory speedy trial right. R.C. 2945.71(B)(1).
 {¶ 11} The magistrate presiding in the two criminal cases granted Wiedemann's motion and ordered his discharge on the two offenses alleged. In his written decision, the magistrate stated:
 {¶ 12} "Because of the delay in bringing him to trial, the court granted his attorney's motion to dismiss. It was a classic case of a case being dismissed because of a technicality. It was hardly the type of ruling that allowed the defendant to walk out of court feeling vindication for his alleged wrongdoing. But, of course, that's what the defendant did. He immediately walked out of the courtroom and chastised *Page 5 
the officers who had arrested him, saying that there was nothing to the case which was evidenced by the dismissal of the charges. This act accomplished little more than irritating a police department that has grown tired of his tirades and infuriating this Magistrate who took great pains in the courtroom to make his feelings crystal clear . . ."
 {¶ 13} The Springboro City prosecutor assigned to Wiedemann's cases, John Sharts, filed objections to the magistrate's order of discharge in the Warren County Court, to which the two cases were transferred on June 13, 2003. That court subsequently overruled the objections and dismissed the charges on speedy trial grounds on June 17, 2004.
 {¶ 14} While Wiedemann's criminal cases were pending in the Warren County Court, Wiedemann commenced the civil action underlying this appeal in the court of Common Pleas of Greene County on August 15, 2003. The complaint that Wiedemann filed named as Defendants Sky Bank, Inc. ("Sky Bank"), Kevin Carsey, the bank teller and complainant in the criminal charges against Wiedemann, Eric Smith, the bank manager, the City of Springboro, John Sharts, the City's prosecutor, and Springboro Police Officers Thomas Barton and Jonathan Wheeler. The complaint alleged that Wiedemann was injured by the "wrongful actions" of Carsey, Smith, and Sky Bank. It also alleged a *Page 6 
claim for relief against Sharts, Barton, Wheeler, and the City of Springboro for violations of Wiedemann's federal civil rights under the Fourth and Fourteenth Amendments. The complaint further alleged a conspiracy between the Defendants, or some of them, to violate Wiedemann's federal constitutional rights, which were not specified.
 {¶ 15} The Defendants filed responsive pleadings. Subsequently, a motion for summary judgment was filed by Sky Bank, Kevin Carsey, and Eric Smith. (Dkt. 19). A motion for summary judgment was also filed by the City of Springboro, John Sharts, Thomas Barton, and Jonathan Wheeler. (Dkt. 29). Following additional submissions on the motions by all parties, the trial court granted the Defendants' motions on February 5, 2007. (Dkt. 48). Wiedemann filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 16} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS/APPELLEES."
 {¶ 17} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day *Page 7 Warehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made.Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326.
 {¶ 18} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. OfEdn. (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal Co., 64 Ohio St.2d 116, 119-120, 1992-Ohio-106. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 19} The claim for relief pleaded in Wiedemann's complaint against Sky Bank, Carsey, and Smith did not allege any particular common law tort that their allegedly "wrongful *Page 8 
actions" constitute. In granting the motions for summary judgment the Defendants filed, the trial court concluded that the claim for relief Wiedemann alleged against those Defendants was for the tort of malicious prosecution. On appeal, Wiedemann adopts that view, though he argues that the trial court erred in granting summary judgment for the Defendants on his claim for relief.
 {¶ 20} The trial court granted summary judgment on Wiedemann's malicious prosecution claim on findings that the criminal proceedings against Wiedemann were not terminated in his favor and also were not lacking in probable cause. The trial court cited and relied on the decision of the Supreme Court in Ash v. Ash (1995), 72 Ohio St.3d 520, in which the court wrote:
 {¶ 21} "This court previously has held that `[t]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.' Trussell v.Gen. Motors Corp. (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus. A private person who initiates or procures the institution of criminal proceedings against another is not subject to liability unless the person against whom the criminal proceedings were *Page 9 
initiated proves all three of the above-listed elements. See 3 Restatement of the Law 2d, Torts (1977) 406, Section 653. This case concerns only the third element: whether the criminal proceedings that gave rise to these malicious prosecution actions were terminated infavor of the plaintiffs.
 {¶ 22} "A proceeding is `terminated in favor of the accused' only when its final disposition indicates that the accused is innocent. See 3 Restatement of the Law 2d, Torts (1977) 420, Section 660, Commenta. Thus, an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused. See Douglas v.Allen (1897), 56 Ohio St. 156, 46 N.E. 707; see, also, Prosser Keeton, Law of Torts (5 Ed.1984) 874, Section 119 (`Prosser'); 3 Restatement of the Law 2d, Torts (1977) 419, Section 659(c), Comment e." Id., at 522.
 {¶ 23} In Ash, a civil action was terminated upon a settlement by voluntary agreement of the parties. In the present case, the trial court held that the criminal charges against Wiedemann were not terminated in his favor because the discharge ordered pursuant to R.C. 2945.73 for a violation of his speedy trial rights was procedural in nature and not a *Page 10 
final disposition indicating that Wiedemann is innocent of the criminal charges. Wiedemann argues that the trial court erred. He cites decisions that were rendered in three cases for that proposition. They are:Hamilton v. Best Buy (Feb. 15, 2002), Montgomery App. No. 19001;Brand v. Geissbuhler (Feb. 27, 1997), Cuyahoga App. No. 70565; andRios v. The Grand Slam Grille (Nov. 18, 1999), Cuyahoga App. No. 75150. In his Reply Brief, Wiedemann cites a fourth holding: Longworth v.Schob (1957), 106 Ohio App. 476.
 {¶ 24} We have reviewed the decisions Wiedemann cites. None involved a speedy trial discharge. A speedy trial discharge has been held to constitute a termination in favor of the accused, if the facts support a finding that the discharge resulted from an abandonment of the prosecution by the prosecutor. Murphy v. Lynn (1997), 118 F.3d. 938.
 {¶ 25} Prosecutorial abandonment is an alternative to a judicial determination of innocence that Ash held may demonstrate a termination in favor of the accused. However, Ash, also held that the finding is a question of law, while Murphy v. Lynn holds that the issue may present a question of fact for the jury. Id., 118 F.3d., at 950.
 {¶ 26} Ash further held that if any one of the three-prong test for malicious prosecution is not satisfied, the claim *Page 11 
necessarily fails. For the reasons discussed below, we find that the second prong of that test, lack of probable cause for the prior criminal proceeding, cannot be satisfied. Therefore, we need not decide whether the trial court erred with respect to its finding relative to the speedy trial discharge, because resolution of that issue is not essential to a determination of the error assigned: whether the trial court erred when it granted Defendants' motion for summary judgment on Wiedemann's malicious prosecution claim.
 {¶ 27} The trial court also granted summary judgment against Wiedemann on his claim for malicious prosecution on a further finding under the rule of Ash that Wiedemann could not show a lack of probable cause for the criminal complaints that Sky Bank, Smith, and Carsey filed which resulted in Wiedemann's criminal prosecution. The court held that, absent a defect in the warrant for his arrest, which was not shown, the warrant demonstrates that those Defendants did not lack probable cause.
 {¶ 28} Probable cause to arrest exists when a reasonably prudent person would believe that the individual to be arrested has committed a crime. State v. Timson (1974), 38 Ohio St.2d 122. Because the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause," a *Page 12 
determination by a judicial officer who issues a warrant that probable cause exists insulates a defendant on whose complaint the warrant issued from liability on a claim of malicious prosecution, "unless the probable cause hearing was tainted by fraud, deception, or false or materially incomplete testimony by the complainant . . ." Frank v. Whitehouse (Aug. 31, 1992), Stark App. No. CA-8958, quoting from Moore v. Barber (June 11, 1990), Stark App. No. CA-7960.
 {¶ 29} A copy of a record maintained by the Springboro Police Department showing that a warrant for Wiedemann's arrest issued was attached to a Supplemental Memorandum in support of their motion for summary judgment filed by Sky Bank, Smith, and Carsey. (Dkt. 30, Exhibit D). The document is certified as true and accurate by the Records Clerk of the Springboro Police Department. Concerning the charge on which Wiedemann was arrested, the report states: "Bench Warrant."
 {¶ 30} Wiedemann argues that the alleged warrant cannot demonstrate probable cause because it was issued by a clerk pursuant to Crim.R. 4(A), and clerks are incompetent to make probable cause determinations. However, the relevant question is instead whether a clerk that issued the warrant failed to function as a neutral and detached magistrate. SeeShadwick v. City of Tampa (1972), 407 U.S. 345, 92 S.Ct. 2119, 32 *Page 13 
L.Ed.2d 783.
 {¶ 31} Upon proof that a warrant for his arrest had issued, which was offered to demonstrate that the criminal proceedings did not lack probable cause, it became Wiedemann's burden under the rule ofDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-170, to offer evidence showing that proof of the warrant was insufficient for that purpose. He could do that by offering evidence showing that the warrant was fraudulently procured or issued on incomplete testimony. Frank v.Whitehouse. Alternatively, Wiedemann could satisfy his burden by offering evidence showing that a clerk who issued the warrant failed to function as a neutral and detached magistrate. Shadwick v. City ofTampa. Wiedemann did neither. Therefore, on evidence that a warrant for Wiedemann's arrest on the criminal charges had issued, the trial court correctly found that the record failed to demonstrate that the criminal proceedings against Wiedemann lacked probable cause, and on that finding the court was required to grant summary judgment for the Defendants on Wiedemann's malicious prosecution claim. Civ.R. 56(C).
 {¶ 32} Even absent proof of the arrest warrant, on this record a lack of probable cause is not shown. Kevin Carsey, the bank teller, testified that Wiedemann had said to him," I *Page 14 
ought to kill you." Carsey also testified that he reported the threat to the officer who responded to his call, and the officer who responded testified likewise. Therefore, there was a showing of probable cause for the prosecution for disorderly conduct and menacing against Wiedemann that was initiated on Carsey's complaint. It became Wiedemann's burden under Dresher v. Burt to contradict that evidence in order to preserve a genuine issue of material fact on the probable cause issue. He failed to do that, by denying either the alleged threat or that Carsey had in fact reported the alleged threat to the officers who obtained the warrant based on what Carsey told them. Therefore, the court could only find on the record before it that there was probable cause with respect to the criminal charges underlying Wiedemann's malicious prosecution claims against the Defendants.
 {¶ 33} The trial court further found Wiedemann could not prove his abuse of process claim against Sky Bank, Smith, and Carsey because there was no proof of any process they abused. We agree. However, from the pleadings in his complaint and his brief on appeal, it appears that Wiedemann's abuse of process claim pertains instead to the conduct of Prosecutor Sharts and Officers Barton and Wheeler, and the City of Springboro, following Wiedemann's discharge by the magistrate, *Page 15 
as grounds for his 42 U.S.C. § 1983 civil rights and conspiracy claims.
 {¶ 34} "While the gist of the action for malicious prosecution is that the prosecution has been carried on maliciously and without probable cause, the essence of an action for abuse of process is the use of process in any manner not proper in the regular conduct of the proceeding, with an ulterior motive . . ." 45 Ohio Jurisprudence 3d, False Imprisonment and Malicious Prosecution, § 67. When committed by persons acting under color of law, an abuse of process may constitute a deprivation of an accused's right to due process of law guaranteed by the Fourteenth Amendment, on which an action may be brought pursuant to42 U.S.C. § 1983.
 {¶ 35} Wiedemann points to the magistrate's admonitions concerning his conduct in relation to Officers Barton and Wheeler after he was ordered discharged, to argue that the Crim.R. 19(D)(3)(b) objections to the magistrate's decision that Sharts filed was an abuse of process, inferring that Sharts' ulterior motive was to punish Wiedemann for the behavior the magistrate described. Wiedemann also points to the fact that, subsequently, Sharts offered to dismiss the criminal charges against Wiedemann if Wiedemann dismissed his civil action. The alleged offer was described in an affidavit *Page 16 
of Wiedemann's attorney in the civil proceeding.
 {¶ 36} Prosecutor Sharts may have had an ulterior motive in objecting to the magistrate's decision, but there is no basis to find that his filing of objections to the magistrate's discharge order pursuant to Civ.R. 19(D)(3)(b) was not proper in the regular course of the proceeding on the criminal charges against Wiedemann. Therefore, Sharts' conduct in that respect cannot support an abuse of process claim.
 {¶ 37} With respect to his alleged offer to dismiss the criminal proceedings, the trial court found that Sharts "was acting as a prosecutor at all times in this case," and that while Sharts'"attempt, if true, to resolve the case through dismissal of both the criminal and civil cases may not have been prudent, . . . his acts still fell within the scope of the so-called advocacy function. Therefore he, as well as the City of Springboro would probably be entitled to immunity on the malicious prosecution claims." (Citing R.C. 2744.02).
 {¶ 38} The Supreme Court has held that a prosecutor may appropriately negotiate an agreement whereby criminal charges are dropped in exchange for a release of 42 U.S.C. — 1983 claims against a city and municipal officials. Newton v. Rumery (1987), 480 U.S. 386, 107 S. Ct. 1187, 94 L.Ed.2d 405. As the Court noted, "[i]n many cases a defendant's choice to *Page 17 
enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action."480 U.S., at 394. As to the prosecutor's motivation, the Court refused to assume that a prosecutor would bring frivolous charges or dismiss meritorious charges. 480 U.S. at 396.
 {¶ 39} The United States District Court for the District of Massachusetts, relying on the Supreme Court's rationale inNewton, has held that a 42 U.S.C. — 1983 claim could not be based on a mere offer to drop a criminal complaint in exchange for a civil release, stating:
 {¶ 40} "Since the Supreme Court has found that such release-dismissal agreements are not per se improper, much less unconstitutional, the offer of such an agreement cannot possibly be construed as unconstitutional. Therefore, [the plaintiff] cannot base his — 1983 claim on the alleged offer to drop the criminal complaint in exchange for a civil release." Grant v. John Hancock Mutual Life InsuranceCo. (D. Mass. 2002), 183 F. Supp. 2d 344, 360.
 {¶ 41} A criminal defendant may have a better chance of success in a subsequent 42 U.S.C. — 1983 claim brought on an abuse of process claim if he can show that he was actually *Page 18 
coerced into accepting an offer to release a civil claim in return for the dismissal of the criminal charges, because "in some cases these agreements may infringe important interests of the criminal defendant and of society as a whole". Newton, 480 U.S., at 392. However, a mere offer by the prosecution that was declined by the defendant is not sufficient to make out a 42 U.S.C. — 1983 claim.
 {¶ 42} Also, if the plaintiff in the malicious prosecution action can show that there is a practice of using these release-dismissal agreements, there is a greater likelihood of success in a 42 U.S.C. — 1983 claim. Salkil v. Mount Sterling Township Police Department
(6th Cir. 2006), 458 F.3d 520, 530 (in dicta, noting that the language of the First Amendment precluding the deprivation of the right to petition the government arguably conflicts with a municipality's attempt to avoid liability for a constitutional wrong though the blanket use of release-dismissal agreements).
 {¶ 43} The offer that Sharts allegedly made was not accepted by Wiedemann, and he has not shown any attempt to coerce him into dismissing his civil case or a pattern of similar conduct. On the authority of Newton v. Rumery, we agree with the trial court that evidence of the offer Sharts made, standing alone, is insufficient to demonstrate abuse of *Page 19 
process as a basis for a 42 U.S.C. § 1983 claim.
 {¶ 44} The trial court also granted summary judgment for all the Defendants on Wiedemann's 42 U.S.C. § 1983 claims that they violated his civil rights and conspired to violate his civil rights. The summary judgments that were properly granted on the underlying allegations of malicious prosecution and abuse of process remove any grounds for the civil rights violations alleged.
 Conclusion {¶ 45} The trial court did not err when it granted the motions for summary judgment filed by the Defendants on Plaintiff Wiedemann's claims for relief. The assignment of error is overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And FAIN, J., concur. *Page 1